### ROLES v. SCHOOL BOARD OF CITY OF NEWPORT NEWS et al.

No. 6.

District Court, E. D. Virginia, Newport News Division.

May 25, 1945.

396

Leon A. Ransom, of Washington, D. C., and R. Wendell Walker, of Newport News, Va., for plaintiffs.

Allan D. Jones and Charles E. Ford, both of Newport News, Va., for defendants.

HUTCHESON, District Judge.

In 1942 a suit was instituted by the plaintiffs, Dorothy E. Roles and Newport News Negro Teachers' Association against the School Board of the City of Newport News, and Joseph H. Saunders, Superintendent of Schools of Newport News. Complainants alleged: That Dorothy E. Roles, a person of African descent and of Negro blood, is a teacher in the public schools maintained and operated by the School Board of the City of Newport News; that the Newport News Negro Teachers' Association, a voluntary unincorporated association, is composed of Negro teachers and principals in the colored schools of Newport News, Virginia; that the suit is brought on behalf of the plaintiff, Roles, and also on behalf of other persons who are teachers and principals in the colored schools of Newport News, similarly situated and affected; that the defendant School Board is an administrative department of the State of Virginia, discharging governmental functions; and that the defendant, Saunders, is superintendent of Schools of Newport News and holds office pursuant to the Constitution and laws of Virginia as administrative officer of the public free school system of that state.

The complainants further alleged that the defendants over a long period of years consistently pursued and maintained a policy of paying colored teachers and principals in the public schools of Newport News salaries less than were paid white teachers and principals in the public school system possessing the same professional qualifications, certificates and experience and exercising the same duties and performing the same services as colored teachers and principals. Upon the issue presented by the complaint and answer thereto, evidence was taken, and on January 28, 1943, an order was entered holding that the allegations of the complaint were sustained by the evidence in that the defendants discriminated against the plaintiffs and persons similarly situated in the payment of salaries, solely on account of their race and color; that the official policy and acts of the defendants in paying the Negro teachers and principals salaries smaller than were paid the white teachers and principals possessing substantially the same professional qualifications and experience and performing similar duties, in so far as such differentiations were predicated solely on race or color, were unlawful and unconstitutional and in violation of the "equal protection clause" of the Fourteenth Amendment to the Constitution of the United States and of 8 U.S.C.A. §§ 41, 43. By the order the defendants were enjoined and restrained from such discrimination, which injunction by its terms became operative as to contracts and agreements made by the defendants for the school year 1943–44. The cause was retained upon the docket.

On May 4, 1944, a petition was filed in this Court on behalf of plaintiff, Newport News Teachers' Association, alleging in substance that since the granting of the injunction the defendants have continued to pay colored teachers and employees salaries less than are paid white teachers and employees having similar qualifications and experience and performing similar duties, solely on account of race or color, and praying the issuance of a rule against the defendants to show cause why an attachment in contempt from this Court should not issue.

A rule to show cause was issued on May 4, 1944.

Several hearings upon the rule have been had. Testimony was introduced by both the plaintiffs and the defendants and the case has been argued at some length, from which it appears that the following situation exists:

Prior to the adoption of the salary schedule of May 11, 1943, copy of which appears in the record as Respondent's Exhibit No. 1, the defendants maintained separate salary scales for white and colored teachers. Petitioner's "Exhibit A" is the salary schedule for white teachers prior to 1941; petitioner's "Exhibit B" is the schedule for colored teachers prior to 1941; petitioner's "Exhibit C" is a schedule adopted in 1941; and petitioner's "Exhibit D" is the schedule adopted for 1942. The schedules for 1941 and 1942 are not of importance so far as the present issue is concerned.

From an examination of petitioner's Exhibits A and B, which represent the sal-

ary schedules of white and colored teachers, respectively, for a considerable period of time prior to 1941, it is apparent that there was a discrimination based upon race or color. Under those schedules a white teacher holding a normal diploma entered the system at a minimum of $1,000 per annum, with annual increases of $100 per year over a period of six years until reaching the maximum of $1,600. The white holders of Bachelor's and Master's degrees entered at $1,200 and $1,400, respectively, and were increased at the rate of $100 per year over a period of ten years, until reaching the maximum of $2,200 and $2,400, respectively. A colored teacher possessing a normal diploma entered the system at a minimum of $600 and after seven annual increases of $75, reached the maximum of $1,125. The colored holder of a Bachelor's degree entered at $1,000 and after seven annual increases of $75, reached the maximum of $1,525. No provision for a colored holder of a Master's degree appears on the schedules.

Subsequent to the issuance of the injunction, the schedule of May 11, 1943 (Respondent's Exhibit No. 1), was adopted. Upon its face that schedule appears applicable to teachers of both races and the rates of compensation are as follows:

Normal professional $800 minimum, with 15 annual increments until the maximum of $1,600 is reached; the holder of a Bachelor's degree upon entering receives $1,000 and after 15 years receives $2,200; the holder of a Master's degree receives a minimum of $1,200, increased to $2,400 after 15 years. The schedule provides that no teacher's salary will be decreased.

Upon its adoption the teachers, white and colored, were transferred to the new schedule, being given credit for the amount of time previously employed. Consequently, a white teacher who entered the system without previous experience in 1933 holding a normal professional diploma at the minimum of $1,000, after seven years would receive $1,600, which amount would not be decreased under the current schedule; whereas, a colored teacher holding a normal professional diploma, who entered the system in 1933 at a salary of $600, had reached the maximum under the old schedule of $1,125 after serving eight years.

In 1943 the colored teacher was transferred to the new schedule with credit for ten years' experience and therefore received under the new schedule $1,350. Accordingly, with no decrease in the salary of the white teacher and annual increases for the colored teacher provided under the new schedule, five years will be required for the colored teacher to reach a salary bracket of $1,600 and be placed on an equal basis with the white teacher.

The discrimination with respect to the holders of Bachelor's degrees may be illustrated by the following facts: In 1934 Rainey, a colored teacher holding a Bachelor's degree, entered the system at a salary of $1,000. He was transferred to the current schedule in 1943 at a salary of $1,600. In 1934 a white teacher named Bayless, holding a Bachelor's degree, entered the system at $1,000 per annum, which was $200 less than the prescribed minimum, and was transferred to the 1943 schedule at $1,900 per annum. Both teachers had completed nine years of service, during which time the colored teacher had reached the maximum of $1,525 under the old schedule but due to the adoption of the new schedule nine years service entitled him to be reclassified at $1,600. The white teacher having completed nine years' service (although entering the system at $200 less than the minimum set for white teachers) had received annual increases of $100 for nine years and upon the adoption of the new schedule was transferred thereunder at $1,900, which, on the new schedule, was equivalent to twelve annual increases. Consequently the white teacher received an advantage equal to three additional years of service.

To eliminate the discrimination complained of, it would be necessary to place teachers of both races upon an equal salary basis. Therefore, to comply with the terms of the order the white and colored teacher should have been transferred to the new schedule at the same rate of pay, whether greater or less than the previous or present scales. It is apparent that the effect of the adoption of the 1943 schedule is to perpetuate the discrimination which existed prior to the issuance of the injunction in this case, so far as teachers then in the system are concerned.

It is therefore obvious that the School Board in adopting the salary schedule for 1943 has not complied with the terms of the order of the Court which enjoined and restrained the defendants from discriminating in the payment of salaries against the colored teachers and principals and in favor of the white teachers and principals

in the public schools, solely on account of race or color, and from paying the colored teachers and principals salaries less than those paid white teachers and principals of substantially the same qualifications and experience and performing similar duties, solely on account of race or color.