Jerry D. JEWELL et al., Plaintiffs,

v.

A. Howard STEBBINS et al., Defendants.

No. LR-68-C-158.

United States District Court
E. D. Arkansas, W. D.

Sept. 10, 1968.

John W. Walker, James E. Youngdahl, of McMath, Leatherman, Woods & Youngdahl, Little Rock, Ark., for plaintiffs.

Richard B. Adkisson, Pros. Atty., 6th Judicial District, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

This is a suit in equity brought by 13 Negro citizens of Pulaski County, Arkansas, against A. Howard Stebbins, the Chairman or Foreman of the Pulaski County Grand Jury, and the 15 other members of the regular panel of the Grand Jury. Plaintiffs seek to enjoin the Grand Jury, the term of which expires automatically on September 23, from functioning further during its existence, and particularly to enjoin it from proceeding to investigate certain racial disturbances which took place in Little Rock in early August and conditions at the Pulaski County, Arkansas, Penal Farm, which conditions may have contributed to the disturbances just mentioned. Jurisdiction is based upon 28 U.S.C.A. § 1343(3) and 42 U.S.C.A. § 1983.

The defendants deny that plaintiffs are entitled to relief.

The suit was filed on August 12, and an application for a temporary restraining order was heard and denied on August 13. The case was fully tried on the merits and argued on September 4. This memorandum incorporates the Court's findings of fact and conclusions of law.

In Arkansas grand and petit jurors are selected for each term of Circuit Court by three jury commissioners appointed by the respective Circuit Judges. Grand jurors are required to be persons of good character, of approved integrity, sound judgment, and reasonable information. Ark.Stats.Ann. §§ 39–201 and 39–206. The grand jurors are empowered to investigate criminal offenses, to return indictments in proper cases, to inquire into conditions and management of public prisons within the respective counties, and into any willful and corrupt misconduct on the part of public officials. Ark.Stats.Ann. §§ 43–904 and 43–907.

The plaintiffs do not attack the Arkansas statutory scheme for the selection of grand jurors, nor do they question the statutory qualifications of grand jurors. Neither do they claim that the defendants are ineligible to serve on the Grand Jury or that they lack the qualifications prescribed by the statute. The position of the plaintiffs is that the selection of Pulaski County grand juries, including this one, has been characterized by invidious and unconstitutional discrimination against Negroes, younger people, and "persons employed in situations other than managerical capacities for the dominant business interests of Pulaski County." Plaintiffs sue for the benefit of themselves and as representatives of the three classes of persons above defined.

More specifically, plaintiffs allege that whereas all of them are eligible to serve as grand jurors, none of them has ever been selected for such service; that only one of the defendant grand jurors

is a Negro, and that all of the alternate grand jurors are white; that there has never been more than one Negro member of any preceding Pulaski County grand jury; that most, if not all, of the defendants are 50 years of age or older; and that most, if not all, of the defendants "are employed in managerial capacities for the dominant business interests of Pulaski County."

It is further alleged that the present Grand Jury fails "in any reasonable and valid way" to represent a cross-section of the population of Pulaski County, and that the alleged failure "is the result of deliberate and systematic exclusion, steeped in custom and practice, of invidiously excluding the classes represented by plaintiffs from (grand jury) service." And it is alleged finally that the alleged failure of the Grand Jury to represent a cross-section of the community renders the further functioning of the Grand Jury violative of the Due Process and Equal Protection Clauses of the 14th Amendment to the Constitution of the United States.

It is to be observed that plaintiffs are suing as members of the general public and as members of the classes which they claim to represent; their claim is that they and other members of those classes have been denied unconstitutionally the opportunity to serve on grand juries. It is not alleged or contended that criminal charges have been or are about to be filed against any of the plaintiffs, or that the Grand Jury has indicted or is about to indict any of the plaintiffs.

It is also to be observed that the only defendants before the Court are the members of the Grand Jury. No jury commissioners are before the Court nor is the Circuit Judge [1] who presides over the First Division of the Circuit Court of Pulaski County and who appoints the jury commissioners who select grand juries and petit juries for the trial of criminal cases.[2]

The defendants admit that all of the plaintiffs are eligible to serve as grand jurors, but deny that this Grand Jury or its predecessors were selected unconstitutionally. Further, defendants deny that plaintiffs have any standing to sue as representatives of the socio-economic, as opposed to racial, classes which they claim to represent.

By way of background, it may be said that prior to the adoption in 1936 of Amendment 21 to the Constitution of the State of Arkansas, all felony prosecutions were required to be based on indictments or presentments returned by grand juries. Amendment 21 permits such prosecutions to be initiated by informations filed by the prosecuting attorneys of the respective judicial circuits of the State.

While Amendment 21 does not impair the historical power of Arkansas grand juries to return indictments in criminal cases, the practical effect of that Amendment has been that the accusatory function of grand juries in Pulaski County and other counties of the State has become largely dormant. As far as Pulaski County is concerned, it is a matter of common knowledge that felony prosecutions are ordinarily commenced by the filing of informations, and that the primary function of the Pulaski County Grand Jury is that of a kind of watch dog over law enforcement and over county institutions and the management of county affairs.

The Circuit Court of Pulaski County has two terms a year, one beginning on the fourth Monday in March, and the other beginning on the fourth Monday in September. The present Grand Jury was empanelled and charged generally at the commencement of the March 1968

---

1. The Honorable William J. Kirby who has occupied his position for many years.

2. The jury commissioners who selected the members of the present Grand Jury are *functus officio;* the record is silent as to whether Judge Kirby has appointed the commissioners who will select the grand jury which will serve during the approaching September Term of Pulaski Circuit Court.

Term of Court. When that term expires on September 23, new jury commissioners will select a new grand jury to serve during the September Term.

In the early afternoon of August 2, a Negro inmate of Pulaski County Penal Farm came to his death allegedly as a result of injuries inflicted upon him by an inmate guard at the institution.[3] On the evening of August 9 a large number of Negroes held memorial services for the deceased inmate. Those services were in the nature of a demonstration held in downtown Little Rock. As the demonstrators were returning to the point where they were supposed to disperse, violence erupted resulting in some property damage and personal injuries. Fortunately, there were no deaths.

On the morning of August 10 it was announced that the Grand Jury would investigate the events of the night before and those leading up to them and would also investigate conditions at the Penal Farm. August 10 fell on Saturday, and this suit was filed the following Monday. The record is silent as to whether and to what extent the Grand Jury has actually conducted the proposed investigation, and as to whether the investigation, if any, is to continue. The Grand Jury has not returned any indictments growing out of the troubles and has filed no report of any kind bearing either upon those incidents or upon conditions at the Penal Farm. The Court *does not know whether the Grand Jury, unless enjoined, will file such a report before its term expires.*

 It is now settled beyond question that the 14th Amendment forbids State jury selection officials from practicing racial and other types of discrimination in choosing persons to serve on grand and petit juries. Unconstitutional discrimination may exist either where members of an identifiable class of eligible persons are consistently excluded from jury service or where there is a mere "token inclusion" of a minimum number of persons belonging to the class. Where consistent exclusion or consistent "token inclusion" is shown over a substantial period of time, a prima facie case of discrimination is made out which is not overcome by the mere assertions of the selecting bodies that discrimination has not been practiced. Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759; Arnold v. North Carolina, 376 U.S. 773, 84 S.Ct. 1032, 12 L.Ed.2d 77; Hernandez v. State of Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; Cassell v. State of Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839; Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181; Hill v. State of Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559; Smith v. State of Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84; Norris v. State of Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074; Bailey v. Henslee, 8 Cir., 287 F.2d 936.

In most jury discrimination cases the claim has been that Negroes have been the subject of discrimination. However, the constitutional prohibition against invidious discrimination is not limited to discrimination against Negroes as such. In Hernandez v. State of Texas, supra, the discrimination condemned was practiced against Mexicans and persons of Latin-American names or descent.

In Thiel v. Southern Pacific Co., supra, it was held that a petit jury from which wage earners had been intentionally excluded according to a long standing custom in the district was unlawfully constituted. While that case involved a federal petit jury rather than a State grand jury, the holding is nevertheless

---

3. The mother of the deceaesd inmate has filed a section 1983 suit in this Court against the County Judge of Pulaski County and the Superintendent of the Penal Farm seeking damages on account of the death of her son. That case is on the docket of this writer and is now pending on a motion to dismiss filed by the defendants.

instructive here. It was said (p. 220 of 328 U.S., p. 985 of 66 S.Ct.) :

"The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community. Smith v. Texas, 311 U.S. 128, 130 [61 S.Ct. 164, 165, 85 L.Ed. 84]; Glasser v. United States, 315 U. S. 60, 85 [62 S.Ct. 457, 471, 86 L.Ed. 680]. This does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community; frequently such complete representation would be impossible. But it does mean that prospective jurors shall be selected by court officials without systematic and intentional exclusion of any of these groups. Recognition must be given to the fact that those eligible for jury service are to be found in every stratum of society. Jury competence is an individual rather than a group of class matter. That fact lies at the very heart of the jury system. To disregard it is to open the door to class distinctions and discriminations which are abhorrent to the democratic ideals of trial by jury."

Against the stated background, the Court turns now to the question of standing of plaintiffs to maintain this suit. In a criminal law context a claim that the selection of a grand or petit jury has been tainted by discrimination is ordinarily raised by a defendant in the course of the proceedings against him or by a post-conviction collateral attack on the judgment of the court. However, in his dissenting opinion in Cassell v. State of Texas, supra, 339 U. S. at 300, 303–304, 70 S.Ct. at 640, Justice Jackson pointed out that the right to complain about discrimination in jury selection is not limited to defendants in criminal cases, and that members of classes discriminated against, even though not defendants, may invoke the provisions of section 1983 to secure relief from the discrimination to which their classes have been subjected. Specifically, he said:

"Qualified Negroes excluded by discrimination have available, in addition, remedies in courts of equity. I suppose there is no doubt, and if there is this Court can dispel it, that a citizen or a class of citizens unlawfully excluded from jury service could maintain in a federal court an individual or a class action for an injunction or mandamus against the state officers responsible. Cf. Hague v. Committee for Industrial Organization, 307 U.S. 496 [59 S.Ct. 954, 83 L.Ed. 1423]; Douglas v. [City of] Jeannette, 319 U.S. 157 [63 S.Ct. 877, 882, 87 L. Ed. 1324]; Morris v. Williams, [8 Cir.] 149 F.2d 703; Myerson v. Samuel, [D.C.] 74 F.Supp. 315; Roles v. School Board, [D.C.] 61 F.Supp. 395. If the order were evaded or disobeyed, imprisonment for contempt could follow."

In a number of cases decided quite recently federal courts have permitted Negroes, whether defendants or members of the general public, to maintain section 1983 actions to obtain declaratory and injunctive relief against racial discrimination in jury selection. See Billingsley v. Clayton, 5 Cir., 359 F.2d 13; Davis v. Jury Commission of Montgomery County, M.D., Ala., 261 F.Supp. 591; White v. Crook, M.D., Ala., 251 F.Supp. 401; Mitchell v. Johnson, M.D., Ala., 250 F.Supp. 117; see also the Annotation entitled "Anticipatory Relief In Federal Courts Against State Criminal Prosecutions Growing Out of Civil Rights Activities," 8 A.L.R.3d 301 et seq.[4]

4. As is pointed out in the Annotation above cited, in a suit brought in federal court to enjoin a criminal prosecution in a State court a question is presented as to whether 28 U.S.C.A. § 2283, prohibits the federal court from granting such relief. Defendants in the instant case did not plead section 2283 and their attorney did not mention it in the course of his argument. The ultimate view which the Court

■ The decided cases clearly suggest, as this Court now holds, that as Negro citizens plaintiffs may maintain this action for injunctive relief.

■ Assuming that the federal courts have the power to grant advance relief against unconstitutional discrimination in the selection of State juries, it is clear that this power is to be exercised sparingly, particularly where injunctive relief is sought. Such judicial restraint is dictated not only by abstract regard for principles of comity and for the rights of the States but also by the practical consideration that improvident federal interference with the selection and functioning of State juries can lead to an intolerable disruption of State judicial machinery in the field of law enforcement. As was said in Davis v. Jury Commission, supra (pp. 593–594 of 261 F.Supp.):

"* * * The fundamental principles of comity which govern our federal system, as exemplified by § 2283, Title 28, United States Code, have traditionally prompted denial of federal injunctive relief affecting state prosecutions in such instances as now presented. Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138. A clear and forceful articulation of these principles was made by the Supreme Court in Stefanelli v. Minard, supra:

The consequences of exercising the equitable powers here invoked are not the concern of a merely doctrinaire alertness to protect the proper sphere of the States in enforcing their criminal law. If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite

a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling and selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court—all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution. * * * "

Turning now to the facts of this case and taking up, first, the claim of racial discrimination, the record contains statistical material showing the racial make-up of the population of Pulaski County and also reflects the racial consists of Pulaski County grand juries for a period of approximately 14 years from 1953 through 1967.

According to the evidence the population of Pulaski County is slightly more than 20 percent Negro, and it may be assumed that about 20 percent of the persons in the County eligible for jury service are Negroes. If Negroes had truly proportional representation on a grand jury panel consisting of 16 persons, there would be three or four Negroes on the panel. In point of fact, with respect to the 28 terms of Circuit Court which were held in the County between March 1953 and September 1967 there has never been more than one Negro on a regular grand jury panel, and during five terms there were no Negroes on either the regular or alternate panel. On only two rather widely separated occasions has any Negro been named as an alternate grand juror; with respect to those particular terms there was one Negro on the regular panel and one Negro

takes of the case renders it unnecessary for the Court to determine whether this action is one to enjoin a "State court pro-

ceeding" or whether, if it is, section 2283 prohibits it from granting the injunctive relief here sought.

on the alternate panel. During the 14 year period covered by the evidence 20 Negroes served as either regular or alternate grand jurors. However, one of those 20 served five times; another served three times; and another served twice. The Negro last mentioned is the sole representative of his race on the current Grand Jury, and this makes his third period of service.

■ The presence of only one Negro on the present Grand Jury, the history of the preceding 14 years, and the repetitive servings on the grand jury of the same individual Negroes are clearly sufficient to make out a prima facie case of racial discrimination in the selection of Pulaski County grand juries, including the one under attack here; and that prima facie case is not overcome by the affidavits of the jury commissioners to the effect that no discrimination was practiced. It is clear to the Court that the commissioners have systematically discriminated against Negroes by either excluding them from grand jury service entirely or by token inclusions of Negroes to the extent which has been indicated.

■ Except for the fact that this case involves a grand jury rather than a petit jury it is very closely parallel to Bailey v. Henslee, supra, in which it was held that racial discrimination had been practiced in the selection of Pulaski County petit jurors. It appears probable that the jury commissioners have now changed their method of petit jury selection in view of the Bailey decision, but the change simply did not extend to the selection of grand jurors.

On this phase of the case the Court finds and concludes that the current Grand Jury was unconstitutionally selected. That conclusion, of course, casts no reflection whatever upon the defendants; they had nothing to do with their own selection, but the fact that they were selected unconstitutionally remains.

The Court's finding of racial discrimination in the selection of the Grand Jury renders it unnecessary for the Court to consider in minute detail plaintiffs' claim of socio-economic discrimination, and, indeed, the evidence is not sufficient to enable the Court to make a detailed comparison of this Grand Jury with preceding grand juries in areas of age, occupation, residence, education, wealth, and the like, although the Court from its examination of plaintiff's Exhibit 4 suspects that the make-up of this Grand Jury in those respects does not differ radically from the make-up of its predecessors.

The evidence does reflect that this Grand Jury by no means represents a cross-section of the population of Pulaski County. There is not a woman on it, nor a person under 50 years of age, nor a day laborer, nor a mechanic, nor a farmer. With one possible exception, none of the grand jurors engages in what is generally considered to be manual labor. None is compensated for his work at an hourly rate of pay; all of the grand jurors derive their income from the earnings of their own businesses, or from salaries, interest, dividends, or retirement pensions. Generally speaking, and subject to some exceptions, all of the grand jurors have college degrees or have received college training; again subject to certain exceptions, the grand jurors are prominent and successful citizens of Little Rock and North Little Rock, and closely identified with large business and financial interests in Pulaski County. Their social life and organizational affiliations reflect their standing in the community.

Enough has been said in the circumstances about the make-up of the Grand Jury, and the Court now addresses itself to a consideration of whether injunctive relief should be granted on the basis of the racial discrimination established by the evidence. In the last analysis the question of whether an injunction should issue in a particular case, including a civil rights case, rests within the judicial discretion of the Court, and the Court in the exercise of its discretion

here has come to the conclusion that an injunction should not be issued.

This Court would be loath in any case to issue an injunction which would in effect quash a State grand jury panel, and in this particular case there are certain considerations which convince the Court that an injunction would not be proper and is unnecessary.

In considering relief it is at once apparent that no injunction which the Court could issue in this case would of itself have any effect on the selection of future grand juries in Pulaski County, and the only relief which the Court would grant would be operative for no more than about two weeks.

Next, as has been pointed out, these plaintiffs stand in no personal peril from any action which the Grand Jury may take or from any report which the Grand Jury may make. From a legal standpoint the plaintiffs as individuals and as representatives of one or more classes have been discriminated against ever since this Grand Jury was empanelled in March but took no action to secure redress for their grievances until mid-August. It is true that the racial disturbances which have been described did not occur until August, and that the complaint indicates that it was the threatened investigation of those disturbances and of the Penal Farm which sparked this lawsuit. It is significant, however, that throughout the entire course of the trial during which all 14 of the grand jurors who were present were questioned rather extensively by counsel for plaintiffs, not a single question was asked about and not a single reference was made to the disturbances or to the Penal Farm or to the Grand Jury's actions or plans with respect thereto. The absence of such questions and references at least suggests that plaintiffs are not greatly concerned about what the Grand Jury does or says in those areas.

While this Grand Jury was unconstitutionally selected, the Court is convinced that the jurors are thoroughly capable of making a full and fair investigation and filing a full and fair report, and this Court will not presume that if the Grand Jury acts and reports upon the disturbances and the Penal Farm either its actions or its reports will be inaccurate or unfair.

Finally, in the circumstances here present, even if the Grand Jury makes an unfair investigation and files an unfair report, the Court is not persuaded that such action will inflict upon the plaintiffs or the classes represented by them any such serious or irreparable injury as would call for injunctive relief.

While the Court is going to permit this Grand Jury to continue to function for the limited remainder of its term, it is obvious in view of what has been said that if future Pulaski County Grand Juries are to escape or withstand successfully attacks upon them or upon indictments returned by them, there are going to have to be some changes made in grand jury selection.

Racial discrimination must, of course, be eliminated. There are going to have to be more Negroes on the Grand Jury, and the repetitious service of the same Negroes on the Grand Jury which Bailey v. Henslee, supra, condemned in reference to the petit jury will have to be avoided or at least minimized, although, of course, that is not to say that a given individual, whether Negro or white, is to be selected for grand jury duty only once in his life, or only once every ten or twenty-five years. The trouble with repetitious service in this context is not so much that the same man serves frequently as a grand or petit juror but that the use of the same individual Negroes again and again to the exclusion of others who are eligible tends to minimize meaningful participation of the Negro community in the judicial process of the State.

Apart from race, the economic and social base of the grand jury should be broadened substantially. This does not mean that the jury commissioners are constitutionally required to make random selections of jurors, or that they

should not seek to find persons of approved integrity, sound judgment, and reasonable information. Our grand juries ought to be made up of men and women having those attributes, but the commissioners should seek out such persons from the entire body of the county and not exclusively from among the financially successful, the influential, or politically or economically powerful, the managerial classes, the middle aged, or any other particular group.

Before concluding this memorandum the Court desires to point out that it is not concerned here with any indictments which the Grand Jury may have returned since March of the current year, and the fact that relief is being denied in this case is not to be taken as a validation of such indictments, if there are any. In view of the fact that the Court has found that the Grand Jury was unconstitutionally selected, the Court does not anticipate that the Grand Jury will return any new indictments between now and September 23.

A decree dismissing the complaint will be entered.