**UNITED STATES of America, Appellee,**

v.

**Terrance Karl ALDEN, Appellant.**

**No. 84–2188.**

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1985.

Decided Nov. 6, 1985.

Rehearing Denied Dec. 19, 1985.

David Chan Hemingway, St. Louis, Mo., for appellant.

Henry J. Fredericks, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

McMILLIAN, Circuit Judge.

Terrance Karl Alden appeals from a final judgment entered in the District Court for the Eastern District of Missouri upon a jury verdict finding him guilty of one count of conspiracy to escape, in violation of 18 U.S.C. § 371 (1982), and one count of aiding an escape, in violation of 18 U.S.C. § 752(a) (1982). Appellant was sentenced to a ten-year term of imprisonment, to be served consecutively to his other sentences. For reversal appellant argues that the district court erred in denying his motions for inspection of ministerial records regarding the impaneling of grand juries.[1] For the reasons discussed below, we remand with instructions.

Appellant, an inmate at the United States Penitentiary at Marion, Illinois, and eight others were charged by a federal grand jury with conspiracy to escape, aiding an escape and various firearms violations. Dewey Stephens, appellant's brother-in-law, was the government's principal witness. The facts outlined below are based on Stephens' testimony.

In March 1983 appellant discussed an escape plan with Stephens. Appellant asked Stephens to pick up several people at the airport, house them and show them the location of the penitentiary. Stephens subsequently received telephone calls from a woman in Puerto Rico confirming the arrangements.

On April 16, 1983, Stephens picked up five Puerto Rican men at the airport and transported them to an apartment which he had rented for them in south St. Louis. Subsequently, Stephens received a package postmarked from Puerto Rico which contained an AR–15 rifle and money orders to be used for the men's expenses. Stephens purchased food, ammunition, army fatigues, watches, compasses, bolt cutters and flashlights for the men. Stephens gave the men three of his own rifles and a piece of pipe. Stephens later moved the men to another apartment.

On April 21, 1983, and on April 23, 1983, Stephens met with appellant at the penitentiary and again discussed the escape plan. On these occasions, Stephens drove some or all of the Puerto Rican men to the area near the penitentiary.

On April 28, 1983, Stephens discussed the escape plan with two other persons, who suggested that he contact the Federal Bureau of Investigation (FBI). On April 29, 1983, an FBI agent placed an electronic surveillance device on Stephens' telephone. Later that same day Stephens received two telephone calls from appellant about the escape plan. In addition, penitentiary authorities taped telephone calls from Tomas Santos, an inmate at Marion, to several of the Puerto Rican men, and from Santos to a woman in Puerto Rico.

During a ride in a car furnished by the FBI and equipped with an electronic surveillance device, Stephens and the five men discussed various aspects of the escape plan. When the group arrived at the site to pick up a second car, law enforcement officers arrested Stephens and the five men and seized some ammunition and two maps.

Appellant's theory of defense is alibi. He sought to prove that he did not make the two telephone calls on April 29, during which the escape plan was discussed, and to establish that Stephens had invented the escape plan in order to protect himself from retaliation for double-crossing prison inmates in drug deals.

On January 11, 1984, appellant filed the first of his pretrial motions requesting access to certain ministerial records regarding grand jury selection. Appellant sought to establish that certain groups had been systematically excluded from service on the grand jury. Appellant requested inspection of roll sheets reflecting the composition of grand juries, attendance records, records setting forth the method by which

---

1. Appellant originally raised two other grounds for reversal: the denial of his request for expert voice spectrography services and the denial of his request to hold over for one day an alibi witness. These two points were withdrawn with prejudice on August 7, 1985, at appellant's request.

the grand juries were impaneled, and records reflecting the reasons for disqualification of a grand juror based on information derived from the questionnaires sent to the names selected from the master wheel. Before the court ruled on appellant's original motion, appellant amended his motion to seek records going back to 1970, whereas his original motion covered the years 1980 to 1983.

The district court granted appellant's original motion but denied the amended motion as overbroad. The district court clerk subsequently provided appellant's advisory counsel with a letter explaining the procedures used to select the grand jury. The clerk provided no information regarding the grand jurors actually chosen, disqualified or excluded.

On May 31, 1984, appellant filed a motion for an order requiring the clerk to comply with the court's order. On June 8, 1984, the district court ordered appellant to show that the records which he sought to inspect were material and relevant to an argument which he was advancing. Subsequently, appellant filed a written response to the court's order and argued in support of his motion. On September 7, 1984, the district court denied the motion.

Appellant argues that the district court erred in denying his requested discovery of the ministerial records because § 1867(f) of the Jury Selection and Service Act, 28 U.S.C. § 1862 et seq. (1982), gives him an unqualified right to inspect jury lists. The government argues that the district court properly determined that the right to inspect jury lists is "essentially unqualified," not absolutely unqualified, and therefore the district court correctly required appellant to show relevance and materiality.

Section 1867(f) establishes a method by which a defendant may secure records kept by the district court clerk or jury commissioner:

> The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except ... as may be necessary in the preparation or pre-

sentation of a motion [challenging compliance with selection procedures] under ... this section.... The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion.

The United States Supreme Court has held that § 1867(f) establishes "essentially an *unqualified* right to inspect jury lists." *Test v. United States*, 420 U.S. 28, 30, 95 S.Ct. 749, 750, 42 L.Ed.2d 786 (1975). The Court stated:

> [Section 1867] grants access in order to aid parties in the "preparation" of motions challenging jury-selection procedures. Indeed, without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge. Thus, *an unqualified right to inspection is required not only by the plain text of the statute, but also by the statute's overall purpose* of insuring "grand and petit juries selected at random from a fair cross section of the community."

*Id.* (emphasis added). The Court further stated that the only limitation authorized by Congress on the disclosure of this information is that *the disclosure be at reasonable times. Id.* at 30 n. 4, 95 S.Ct. at 750 n. 4.

"To avail himself [or herself] of [the] right of access to otherwise unpublic jury selection records, a litigant needs only allege that he [or she] is preparing a motion challenging the jury selection procedures." *United States v. Layton*, 519 F.Supp. 946, 958 (D.C.Cal.1981). *See Test v. United States*, 420 U.S. at 30, 95 S.Ct. at 750. A defendant's motion may not be denied because it is unsupported by a "sworn statement of facts which, if true, would constitute a substantial failure to comply 'with the provisions of the Jury Selection Act.'" *United States v. Marcano-Garcia*, 622 F.2d 12, 18 (1st Cir.1980) (citation omitted); *see United States v. Lawson*, 670 F.2d 923, 926 (10th Cir.1982); *United States v. Armstrong*, 621 F.2d 951, 955 (9th Cir.1980); *People of the Territory*

*of Guam v. Palomo,* 511 F.2d 255, 258 (9th Cir.1975) (defendant is entitled to inspect and copy jury records in order to make his motion to stay or dismiss under § 1867(a) and to comply with § 1867(d)'s requirement of a sworn statement of facts). Nor may a motion to inspect be denied because the defendant fails to allege facts which show a "probability of merit in the proposed jury challenge." *United States v. Beaty,* 465 F.2d 1376, 1380 (9th Cir.1972).

In *United States v. Beaty,* the district court denied the defendant's initial motion for inspection of the jury records because the motion was unsupported by sworn statements of facts and was a "fishing expedition with no justification shown and ... apparently made for the purpose of delay." 465 F.2d at 1379. The defendant's amended motion for "unlimited inspection of jury records" was also denied because the district court held that the defendant alleged no facts "to show a probability of merit to the proposed jury challenge" and the granting of the motion would "create serious security problems and interfere with the United States Marshal's responsibility for prisoner security." *Id.* at 1379–80. The Ninth Circuit reversed the district court's decision denying the motion and held that

> the statutes [Section 1867(f)] clearly mean what they stated. [A defendant] or his attorney or investigator, as the court might direct depending upon the circumstances, was entitled to inspect the old records from the master jury wheel ... and the 'contents of records or papers used by the jury commission or clerk in connection with the jury selection process ...'
>
> ... The [district] court was free to fashion how the inspection should be made and could have provided that [the defendant's] attorney or his investigator make the inspection if the court ... found that [the defendant, a convicted felon,] presented a security problem. [The defendant] ... had a right to make the inspection before he made a motion to challenge the jury under § 1867(a).

*Id.* at 1381–82. The court remanded the case to the district court for the purpose of allowing an inspection of the jury records. *Id.* at 1382.

The Fifth Circuit, relying on *Test v. United States,* has similarly held that a defendant has an unqualified right to inspect and copy jury records. *Government of Canal Zone v. Davis,* 592 F.2d 887 (5th Cir.1979) (*Davis*). Because of the denial of their pretrial motion to inspect and their observation that the jury panel was composed entirely of white men and women, 90% of whom were between 45 and 55 years old, the defendants in *Davis* waived their right to trial by jury. The defendants expressly indicated that they wished to appeal the denial of their motion to inspect. The Fifth Circuit stated that because "defendants' right to inspection was unqualified, whether or not the accompanying affidavit established a prima facie case of defective jury selection is of no import ... [because] a defendant is denied access to the very materials containing the information necessary to the filing of a motion to dismiss for defective jury selection...." *Id.* at 889. The decision of the district court was reversed and the conviction set aside.

In the present case the district court denied appellant's amended motion for roll sheets and "records reflecting the reasons for disqualification of a grand juror" which appellant sought in order to support his argument that the grand jury did not represent a fair cross-section of the community. Appellant specifically contended that Hispanics and persons between the ages of 18–35 were underrepresented on the grand jury. *United States v. Alden,* No. 83–128CR4 (E.D.Mo. June 8, 1984), slip op. at 5. The district court, balancing the "defendant's right to discover the facts necessary for a successful grand jury challenge" and the need "to protect the integrity of the grand jury process and also to protect innocent participants, including the grand jurors themselves," *id.,* held that appellant must show that the information sought was relevant and material to an argument he was advancing. The district court con-

cluded that the information to be obtained from the jury records was not material or relevant because "any evidence that Hispanics are underrepresented to a statistically significant degree will not prove that Hispanics are underrepresented to a legally significant degree," "there is some doubt that 'Hispanic' persons comprise a cognizable group," the juror questionnaires would not provide appellant with the desired information because the questionnaires do not include an "Hispanic" category, and appellant's "argument pertaining to the possible exclusion of 18–35 year olds is immaterial because groups defined by age brackets are not cognizable." *Id.*

Although the district court's analysis is persuasive, the district court is not free to establish additional requirements that defendants must meet in order to gain access to jury selection records. The Supreme Court has unequivocally stated that the right to inspect these records is "essentially unqualified" and is conditioned only in the manner set forth in the statute. *Test v. United States*, 420 U.S. at 30, 95 S.Ct. at 750. Even if the defendant's anticipated challenges to the jury selection process, as articulated at the time of his motion for inspection, are without merit, the defendant may still inspect the jury records. Grounds for challenges to the jury selection process may only become apparent after an examination of the records. *Test v. United States*, 420 U.S. at 30, 95 S.Ct. at 750; *Davis*, 592 F.2d at 889.

Although we hold that the district court improperly denied appellant's motion to inspect and copy jury selection records under § 1867(f), this error does not mandate reversal of appellant's conviction at this time. *United States v. Lawson*, 670 F.2d at 926; *United States v. Marcano-Garcia*, 622 F.2d at 18; *United States v. Beaty*, 465 F.2d at 1382. Rather than reverse, we remand this case to the district court to allow appellant to inspect the relevant documents as permitted by § 1867(f). If a motion challenging the jury is made, the district court shall hear and rule upon the matter. If the district court determines that the grand jury has been improperly selected, the district court shall vacate the judgment.

HENLEY, Senior Circuit Judge, concurring.

The result reached by the court is eminently correct. However, the tendency of the inferior federal courts, and the majority here, to read *Test v. United States*, 420 U.S. 28, 95 S.Ct. 749, 42 L.Ed.2d 786 (1975), as giving virtually absolute rights of access to jury records regardless of relevancy or materiality to an argument advanced or to be advanced by a moving party leads me to state somewhat different views.

The majority here finds persuasive the district court's analysis of lack of merit in Alden's prospective challenge to age group and "Hispanic" categories, but goes on to observe that "[e]ven if the defendant's anticipated challenges to the jury selection process, ... at the time of his motion for inspection, are without merit, the defendant may still inspect the jury records." *Ante*, at 775.

While ultimately it may prove to be true that Alden can win neither of his challenges to jury selection, it is at least arguable that he can win. It is now settled beyond question that members of an identifiable class may not be excluded from jury service. *See Jewell v. Stebbins*, 288 F.Supp. 600 (E.D.Ark.1968). And certainly it is possible that "Hispanic," whatever the term may include, may be an identifiable class. *Compare Hernandez v. Texas*, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954), in which the condemned discrimination was against Mexicans and persons of Latin-American names or descent. Thus, I would reverse here because I believe examination of the requested jury records might well disclose information relevant to an arguably meritorious challenge to jury selection.

This is as far as this court, and perhaps this opinion, need go in this case at this time. But I write on because I cannot join the court in upholding a right to inspect regardless of a showing of merit, a holding

said to be required by the *Test* Court's footnoted observation that the only limitation authorized by Congress is that the inspection be at reasonable times. *Test v. United States*, 420 U.S. at 30 n. 4, 95 S.Ct. at 750 n. 4.

In considering the strictures of *Test*, the district court here said in part:

It can be argued that a relevancy standard is directly contrary to the Supreme Court's holding in *Test v. United States*, 420 U.S. 28, 30 [95 S.Ct. 749, 750, 42 L.Ed.2d 786] (1975). Such an argument is robbed of merit when the *Test* decision is examined closely. *Test* was a per curiam opinion in which there was no dispute between the parties on the main issue. As respondent, the United States agreed with the petitioner that the district court had erred in not allowing petitioner to inspect the records. There being no dispute, the Supreme Court simply issued a per curiam opinion adopting the argument advanced by both parties. In addition, petitioner's and the *amicus'* briefs before the Supreme Court indicate that there had been some showing of relevancy and materiality, albeit in the guise of a prima facie showing of systematic exclusion of blacks and Hispanics. Moreover, no party before the Supreme Court in the *Test* case advanced the argument that unlimited disclosure of grand juror identities would chill the grand jury process.... Experience has shown that the precedential value of generalized Supreme Court holdings, especially per curiam holdings, should be restricted to the factual and legal arguments presented by the parties or raised by the Court *sua sponte*. Cf. *Rose v. Lundy*, 455 U.S. 509, 514 n. 5 [102 S.Ct. 1198, 1201 n. 5, 71 L.Ed.2d 379] ...; *Northern Pipeline Construction v. Marathon Pipeline Co.* [458 U.S. 50], 102 S.Ct. 2858, 2876 n. 31 [73 L.Ed.2d 598] (1982).... It is apparent to this Court that the Supreme Court's use of

the modifier "essentially unqualified" was designed to give lower courts flexibility to guard interests that were not raised before the Supreme Court in what was tantamount to an uncontested lawsuit. The need for grand juror anonymity is one of these interests.

*United States v. Alden*, No. 51–83–128 CR(4), Memorandum and Order at 6–8 (E.D.Mo. June 8, 1984). Other inferior federal courts might do well to share the district court's reluctance to give *Test* a broad reading.

Without deciding the full extent to which the statute itself restricts, conditions or qualifies any alleged right to inspect, one may at least suggest that the plain language of 28 U.S.C. § 1867(f), a section relied upon in *Test* and here, that disclosure of jury selection records or papers is prohibited "except ... as may be necessary ...," involves some restriction. Who is to decide what is necessary? The Supreme Court did not decide that question in *Test*. If called upon to decide it, the high Court might very well refuse to delete the words "as necessary" from the statute and hold that in the first instance a district court could in some circumstances require a showing of arguable merit as a condition to disclosure.

As stated, I concur in the result, but decline to accept in full the court's reliance on *Test*[1].

---

1. The district court when granting appellant's original motion limited disclosure initially to appellant's attorney. Presumably that limitation resulted in part from concerns for safety of individual grand jurors. I do not understand our order of remand as prohibiting necessary precautions for safety of jurors should the need therefor continue or arise.