632 A.2d 1175

**John Olden LEWIS**

v.

**STATE of Maryland.**

**No. 22, Sept. Term, 1993.**

Court of Appeals of Maryland.

Nov. 15, 1993.

Sherrie B. Glasser, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Kreg Paul Greer, Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

RODOWSKY, Judge.

The issue here is one of statutory construction. The question is whether Md.Code (1974, 1989 Repl.Vol., 1993 Cum.

Supp.), § 8–212 of the Courts and Judicial Proceedings Article (CJ) confers on a litigant in a civil action or criminal cause that is to be tried to a jury a relatively unqualified right to inspect, reproduce, and copy records relating to the selection of prospective grand and/or petit jurors for the period of jury service relevant to the civil action or criminal cause. Applying the plain meaning of the statute, we shall hold that it does.

The petitioner, John Olden Lewis (Lewis), was convicted in the Circuit Court for Wicomico County on six counts charging violations of the controlled dangerous substances laws. He was sentenced to two concurrent twenty-year terms of imprisonment, the first ten years of each to be served without possibility of parole.

Lewis had been indicted on June 28, 1990. Jury trial of the charges commenced on February 20, 1991, but a mistrial, on Lewis's motion, was declared that day. After a motion to dismiss on double jeopardy grounds had been made by Lewis, heard by the court, and denied, Lewis, on May 14, 1991, filed the following motion which is the subject of this review:

> "Defendant ... moves for permission to inspect and copy the juror qualification forms on the grounds that he must have them to be able to determine whether or not to file the appropriate motions pursuant to [CJ] § 8–211...."

Lewis filed no motion, memorandum, or other paper alleging that there had been any substantial failure to comply with the requirements applicable to the selection of grand jurors or prospective petit jurors, and he filed no affidavit setting forth facts constituting such a substantial failure.

CJ Title 8, subtitle 2 regulates juror selection. Each circuit court is required to maintain "a written plan for random selection of grand and petit jurors." § 8–201(a). Selecting names of prospective jurors from voter registration lists or other sources that would provide random and non-discriminatory selection is mandatory. § 8–202(2). These names constitute the master wheel, which is periodically emptied and refilled. § 8–202(2)(ii). When directed by the circuit court, the clerk, jury commissioner or a judge publicly draws at

random from the master wheel the names of as many persons as are required for jury service. § 8–205(a). The names of the persons selected may not be disclosed "except as provided in the juror selection plan or § 8–212." § 8–205(b). The persons selected from the master wheel are sent juror qualification forms. §§ 8–202(2)(i) and 8–206. The forms ask of each potential juror that person's name, address, age, sex, education, race, religion, national origin, occupation, spouse's occupation, length of residence in county, prior jury service, mental or physical impairments, criminal record and whether literate. § 8–202(5). A limited number of grounds of disqualification from jury service are set forth in § 8–207. Those persons who answered questionnaires and who are not disqualified comprise the qualified wheel. § 8–208(a). The number of names required from time to time for assignment to grand and petit jury duty is drawn at random from the qualified wheel. § 8–208(a)(2) and (3).

The records sought by Lewis's motion were answered juror questionnaires. As the foundation for his right to inspect and copy Lewis cited § 8–212(b).

The circuit court denied the motion to inspect, explaining its ruling by a marginal notation which reads: "This motion does not comply with 8–211 of the Courts Article in any manner. It is no more than an attempt to embark on a fishing expedition."

CJ § 8–211, relied on by the circuit court, in relevant part provides:

"(a) *Motion in criminal cases.*—In a criminal case, before the voir dire examination begins, the defendant or State's Attorney, as the case may be, may move to dismiss the indictment or stay the proceedings on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

(b) *Motion in civil cases.*—In a civil case, before the voir dire examination begins, any party may move to stay the proceedings on the ground of substantial failure to comply with the provisions of this title in selecting the petit jury.

(c) *Evidence in support of motion; stay of proceedings on finding of substantial failure to comply.*—After a motion is filed under subsection (a) or (b) of this section, containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title, the moving party is entitled to present the testimony of the jury commissioner or clerk, any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence in support of his motion."

CJ § 8–212(b), relied on by Lewis, provides:

"(b) *Disclosure of contents.*—Until the master jury wheel has been emptied and refilled in accordance with § 8–202(2) of this subtitle and every person who is selected to serve as a juror before the master wheel was emptied has completed his service, the contents of any records or papers used by the jury commissioner or clerk in connection with the jury selection process may not be disclosed, except as necessary for the preparation of a motion under § 8–211(a), (b), or (c) of this subtitle. The parties in a case may inspect, reproduce, and copy these records or papers at any reasonable time during the preparation and pendency of the motion."

Following conviction and imposition of sentence, Lewis appealed to the Court of Special Appeals. In an unreported opinion that court affirmed, in substance concluding that Lewis's motion to inspect failed to meet requirements found in § 8–211(c). The court noted particularly the lack of a sworn statement of facts presenting the claimed defect. We granted Lewis's petition for certiorari.

■ The plain language of § 8–212(b) is dispositive. That subsection confers a right of pre-motion inspection ("The parties in a case may inspect, reproduce, and copy these records or papers at any reasonable time during the preparation and pendency of the motion."). The first sentence of § 8–212(b) establishes the rule that the juror selection records may not be disclosed for the period of time therein provided, "except as necessary for the preparation of a motion under

§ 8–211(a), (b), or (c) of this subtitle." Thus, the right is recognized indirectly by exception from the confidentiality requirement and directly by the express conferral of the right.

■ Further, both the direct and indirect statements give the right operative effect prior to the filing of any motion challenging the array. Section 8–212(b) authorizes inspection of records "during the preparation ... of the motion" challenging the array, and the papers or records that may be inspected are those "necessary for the preparation of a motion" challenging the array.

The State contends that the motion challenging the array must first be filed and that that motion, per § 8–211(c), must be supported by "a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of" CJ Title 8. Under the State's contention, only after a prima facie demonstration of defect is made by affidavit may inspection of the prospective juror selection records be had. The language employed in § 8–212(b) is inconsistent with the State's position. Had the General Assembly intended the sequence for which the State contends, the last sentence of § 8–212(b) should have provided, in effect, that the parties may inspect "during the pendency of the motion and in preparation for the hearing thereon." Similarly, the exception to confidentiality in § 8–212(b) should have allowed disclosures only "as necessary for the support of a motion," or contained words of similar import that could be read as allowing disclosure only when motions challenging the array are already pending.

■ Giving effect to the references in § 8–212(b) to "preparation" of a motion also supplements § 8–211(c). That subsection lifts the veil of confidentiality from prospective juror records by allowing them to be presented as evidence in support of a jury challenge, after a motion challenging the array has been filed. Under the construction urged by the State the right to inspect and the exception to confidentiality stated in § 8–212(b) are basically coextensive with the right to present as evidence in support of a motion stated in § 8–

211(c). Under that construction § 8–212(b) becomes, in part, surplusage, and no effect at all is given to the twofold reference in § 8–212(b) to "preparation" of a motion.

The provisions now codified as CJ Title 8, subtitle 2 were originally enacted by Chapter 408 of the Acts of 1969. Although we have not uncovered any legislative history in documents of the General Assembly, it is clear both from text and timing that the Maryland statute was prompted by, and patterned on, P.L. 90–274, the "Jury Selection and Service Act of 1968," 28 U.S.C. §§ 1861 through 1869 (the Federal Act). Legislative history and judicial applications of the federal enactment support our reading of the Maryland statute.

The Federal Act was proposed by the Committee on the Operation of the Jury System of the Judicial Conference of the United States. H.R.Rep. No. 1076, 90th Cong., 1st Sess., *reprinted in* 1968 U.S.Code Cong. & Adm.News 1792, 1793; 42 F.R.D. 353 (House Report). The project seems to have been precipitated principally by *Rabinowitz v. United States,* 366 F.2d 34 (5th Cir.1966), which had invalidated a "key-man" system of selecting jurors.[1]

In the Judicial Conference draft confidentiality and challenges to the array were addressed in proposed Title 28, § 1867. Subsections (a), (b), and (c) respectively dealt with challenges by an accused, by the Attorney General in criminal cases, and by parties in civil cases. Each subsection would have permitted the introduction into evidence of non-public records of court officials relating to prospective juror selection "where there is evidence that there has been a failure to comply with" certain sections of the proposed statute. 42 F.R.D. at 376–77. Subsection (e) of that Judicial Conference proposal read:

"The contents of any records or papers produced pursuant to subsections (a), (b), or (c) of this section, not previously made public, shall not be disclosed, except as may be

---

1. Under a "key-man" system, business and civic leaders of the community suggest to the court persons who are thought to have appropriate qualifications for jury service.

necessary in the preparation or presentation of the motion, until after the master jury wheel has been emptied ... and all persons selected to serve ... have completed such service: *Provided,* That the parties in a case shall be allowed to inspect, reproduce and copy such records and papers at all reasonable times during the pendency of the motion."

*Id.* at 378. Under this draft the exception to confidentiality covered "the preparation or presentation of the motion," but inspection was allowed only "during the pendency of the motion." *See id.*

In 28 U.S.C. § 1867, as enacted, the apparent inconsistency was resolved. First, the provisions of draft subsections (a), (b), and (c), dealing with evidence at the hearing on a motion challenging the array, were consolidated in subsection (d) which in relevant part reads:

"Upon motion filed under subsection (a), (b), or (c) of this section, containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title, the moving party shall be entitled to present in support of such motion ... any relevant records and papers not public or otherwise available used by the jury commissioner or clerk...."

This language was included in Chapter 408 of the Acts of 1969. It was enacted as former Md.Code (1957, 1968 Repl.Vol., 1969 Cum.Supp.), Art. 51, § 10(d), and it is now codified as CJ § 8–211(c), on which the State relies.

Subsection (e) of the Judicial Conference draft was enacted as subsection (f) of 28 U.S.C. § 1867, but the conferral of the right of inspection was enlarged. In the Federal Act inspection by a party is allowed "during the preparation and pendency" of the motion, thus making the right consistent with the exception to confidentiality for disclosures "necessary in the preparation or presentation of the motion."

Subsection (f) of 28 U.S.C. § 1867 in relevant part reads: "The contents of records or papers used by the jury commission or clerk in connection with the jury selection pro-

cess shall not be disclosed, except pursuant to the district court plan or as may be necessary in the preparation or presentation of a motion under subsection (a), (b), or (c) of this section, until after the master jury wheel has been emptied and refilled pursuant to section 1863(b)(4) of this title and all persons selected to serve as jurors before the master wheel was emptied have completed such service. The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion."

In Maryland, this language, substantially verbatim, was enacted in former Art. 51, § 10(f). It is today CJ § 8–212(b), on which Lewis relies.

The Federal Act was before the Supreme Court of the United States in *Test v. United States*, 420 U.S. 28, 95 S.Ct. 749, 42 L.Ed.2d 786 (1975). An accused had moved to dismiss his indictment, alleging that the prospective juror selection process in the Eastern District of Colorado disproportionately excluded persons with Spanish surnames, students, and African–Americans. Attached to the motion was an affidavit setting forth facts that had been disclosed by testimony in another case. The accused also moved for an order permitting inspection and copying of jury lists.[2] The District Court had denied the accused's motions, and the United States Court of Appeals for the Tenth Circuit had affirmed. After the United States Supreme Court granted certiorari, the Government in brief and at oral argument agreed that the accused had been erroneously denied access to the lists. In a per curiam opinion the Court, after quoting, with emphasis, the conferral of the inspection right in § 1867(f), observed:

---

**2.** What the Supreme Court opinion refers to as the "jury lists" appear to be the qualified wheel or list of qualified jurors. The defendant in *Test* sought to compare the numbers of persons in the qualified wheel who were African–American, Hispanic, and students with census data in order to demonstrate statistically the improbability of random selection for jury service. Brief for the Petitioner at 18–19, *Test v. United States*, 420 U.S. 28, 95 S.Ct. 749, 42 L.Ed.2d 786 (1975).

"This provision makes clear that a litigant has essentially an *unqualified* right to inspect jury lists. It grants access in order to aid parties in the 'preparation' of motions challenging jury-selection procedures. Indeed, without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge. Thus, an unqualified right to inspection is required not only by the plain text of the statute, but also by the statute's overall purpose of insuring 'grand or petit juries selected at random from a fair cross section of the community.' 28 U.S.C. § 1861."

*Id.* at 30, 95 S.Ct. at 750–51, 42 L.Ed.2d at 789 (footnotes omitted).

In the matter before us the State argues that *Test* is distinguishable because the accused had filed a motion to dismiss and had submitted a supporting affidavit. The Court made clear, however, that its holding was not confined to so narrow a ground when it said: "Since we conclude that petitioner had an unqualified right to inspection under § 1867(f) we do not decide whether his counsel's affidavit was sufficient to establish a prima facie case." *Id.* at 29 n. 2, 95 S.Ct. at 750 n. 2, 42 L.Ed.2d at 789 n. 2.

■ Just as the State in the instant matter seeks to limit the right to inspect prospective juror records by attempting to read CJ § 8–211(c) into § 8–212(b), so have federal prosecutors sought to read provisions of 28 U.S.C. § 1867(d) into subsection 1867(f). Since *Test* was decided, federal courts unanimously have rejected that construction. Neither a motion, seeking either dismissal or a properly selected array, nor a sworn statement of facts constituting a substantial failure to comply with the Federal Act is a precondition of the right to inspect in the preparation of a motion. *See United States v. Curry,* 993 F.2d 43, 44 (4th Cir.1993); *United States v. Alden,* 776 F.2d 771, 773–74 (8th Cir.1985); *United States v. Lawson,* 670 F.2d 923, 926 (10th Cir.1982); *United States v. Marcano–Garcia,* 622 F.2d 12, 18 (1st Cir.1980); *Government of the Canal Zone v. Davis,* 592 F.2d 887, 889 (5th Cir.1979); *People*

*of the Territory of Guam v. Palomo,* 511 F.2d 255, 258 (9th Cir.1975) (dicta); *United States v. Beaty,* 465 F.2d 1376, 1381–82 (9th Cir.1972); *United States v. Carlock,* 606 F.Supp. 491, 492 (W.D.La.1985); *United States v. Layton,* 519 F.Supp. 946, 958 (D.C.Cal.1981). *Cf. United States v. Grey,* 355 F.Supp. 529 (W.D.Okla.1973) (decided prior to *Test*).

For the foregoing reasons, we hold that the circuit court and the Court of Special Appeals erred in basing the denial of Lewis's motion on the absence of a motion challenging the array supported by facts under affidavit. The appropriate disposition of this appeal is a limited remand. *See Warrick v. State,* 326 Md. 696, 713, 607 A.2d 24, 32–33 (1992); *McMillian v. State,* 325 Md. 272, 296–97, 600 A.2d 430, 442 (1992); *Reid v. State,* 305 Md. 9, 15–16, 501 A.2d 436, 439–40 (1985); *Bailey v. State,* 303 Md. 650, 659, 496 A.2d 665, 669–70 (1985); *Warrick v. State,* 302 Md. 162, 174, 486 A.2d 189, 195 (1985). This is the remedy applied by the federal courts where the right of inspection under the Federal Act has been denied. *See Test,* 420 U.S. at 29, 95 S.Ct. at 750; *Curry,* 993 F.2d at 44–45; *Alden,* 776 F.2d at 775; *Lawson,* 670 F.2d at 926; *Marcano-Garcia,* 622 F.2d at 18; *Davis,* 592 F.2d at 890; *Beaty,* 465 F.2d at 1382.

In the instant appeal the State makes an additional argument in support of the circuit court's ruling. The submission is that, under CJ § 8–212(b), the exception to confidentiality applies only to records "necessary for the preparation of a motion under § 8–211...." Although the circuit court did not decide whether the completed juror questionnaires were "necessary," we can determine the issue as a matter of law.

The State's argument relies on *United States v. Davenport,* 824 F.2d 1511 (7th Cir.1987), a case arising out of the Northern District of Illinois. The accused argued that, because over twenty percent of the persons who were eligible for jury duty in that Chicago-based district had not registered to vote, and thus were not in the pool of persons considered for jury service under the plan, the Federal Act required a jury selection plan that supplemented the master wheel with names

obtained from other sources. 824 F.2d at 1514. The defendant sought all of the records relating to prospective juror selection. *Id.* at 1513. Relying on 28 U.S.C. § 1857(f), the Seventh Circuit held that "the contents of records ... shall not be disclosed unless those records' contents are shown to be 'necessary' for the preparation of a motion to claim ... that there has been a 'substantial failure to comply' with the Act." *Id.* at 1515. In the Northern District of Illinois prior jury lists on a monthly basis were available as a public record in the clerk's office. *Id.* Thus, "[t]he defendant ha[d] not shown why more is needed than what is already available or why the statutory prohibition of disclosure needs to be breached." *Id.* Alternatively, the Court held that "[v]oter lists take in a cross section of the community of sufficient magnitude to satisfy the Act in the absence of some particular circumstance or scheme undermining the worthy purposes of the Act." *Id.* The Court then described the defendant's application as "a frivolous exploration," and openly speculated that the purpose of the request was to aid in voir dire examination. The discussion of the issue concluded with this observation:

> "If these completed judicial jury forms were released to defendants generally there would exist a possibility of substantial abuse of the information the forms contain, which could have serious consequences for individual jurors and the system."

*Id.* (footnote omitted).

■ Maryland Rule 4–252, dealing with motions in circuit courts in criminal causes, recognizes that a "defense, objection, or request capable of determination before trial without trial of the general issue, shall be raised by motion...." Md.Rule 4–252(c). Section (d) of Rule 4–252 requires that a motion "shall state the grounds upon which it is made...." Here the grounds averred by Lewis were that he "must have" the juror qualification forms "to be able to determine whether

or not to file" a challenge to the array.[3] Thus whether Lewis's stated "grounds" are sufficient to give rise to inspection presents substantially the same issue that we decided above. If a litigant has the right to inspect the potential juror selection records, without any showing of a factual basis for believing or suspecting that the statutes have not been complied with, then inspection is "necessary for the preparation of a motion under § 8–211." As the Supreme Court observed in *Test,* "without inspection, a party almost invariably would be unable to determine" the potential merits of a challenge to the array. 420 U.S. at 30, 95 S.Ct. at 750. Inasmuch as we have already held that the right of inspection directly conferred by the last sentence of § 8–212(b) confers the right of inspection without any such showing, the limitation to records "necessary for the preparation of a motion" does not support the trial court's ruling in this case.

For these reasons the grounds averred in the motion filed by Lewis in this case satisfy the requirements of § 8–212(b). Had Lewis averred that (1) he intended to file a motion challenging the array, and that (2) the inspection of the records was "necessary for the preparation of a motion," Lewis literally would have complied with § 8–212(b). Lewis actually alleged that he must have the juror qualification forms "to determine whether or not to file the appropriate motions." Thus, Lewis (1) intended to file a motion but (2) he would not file if inspection failed to reveal support for the motion. There is no substantial difference in the two situations. The condition that there be demonstrable merit for the filing of the motion is implicit in the first alternative and is somewhat more explicit in Lewis's phraseology.

Congress recognized the possibility that the Federal Act might be used for purposes of delay through the filing of non-meritorious motions challenging the array, but the congres-

---

**3.** We take judicial notice of the fact that the completed juror questionnaires would disclose, for example, the race of the prospective juror, but the lists of persons constituting the venire or panel of prospective jurors that are furnished to trial counsel for jury selection do not reflect race.

sional judgment was that three features of the legislation would reduce that risk. Those features were the time limits on the making of challenges, the "specific and comprehensive nature of the provisions of the Act and the local plan [that would] assure that there are readily available standards against which the selection procedures may be measured," and the requirement "that the challenge motion be accompanied by a sworn statement of facts," thus permitting swift disposition of challenge motions that fail to state a case. House Report at 1805–06. The House Report, with respect to inspection of records, states:

"In aid of a motion challenging the selection procedure, subsection (d) of new section 1867 entitles the challenging party to present the testimony of the commissioner or clerk if these officials are available. Likewise, the challenging party may obtain relevant official records and papers which are not public or otherwise available."

*Id.* at 1806. Thus, the protections against abuse of the Federal Act are built into the procedure at the stage when a court considers a motion challenging the array and not at the stage when the litigant seeks to inspect the prospective juror selection records. In Maryland, CJ Title 8, subtitle 2 follows the same format and incorporates the same philosophy of liberal discovery.

The Seventh Circuit in *Davenport* perceived abuse of the right to inspect prospective juror selection records through use of the information obtained, not in evaluating a challenge to the array, but in voir dire. Inasmuch as the custom in circuit courts in this State is for the judge, and not counsel, to conduct voir dire, the abuse feared by the *Davenport* court would seem to be quite minimal in this State. Nor does counsel for a litigant have any obligation routinely to review prospective juror selection records, simply in the hope of uncovering some defect, absent any reason to believe that such an examination would be fruitful. If it develops that examinations of prospective juror selection records, that do not result in challenges to the array, interfere with the work of jury commissioners and clerks of court, procedural safe-

guards on the inspection right can be erected by statute, or by rule of this Court adopted on an emergency basis. Even absent statutes or rules, the custodian of the prospective juror records is impliedly authorized to impose requirements on inspections, not inconsistent with the purposes of § 8–212(b) that are reasonably related to the continued security and integrity of the records, and to assess reasonable charges for any copying services provided.

On remand, the circuit court should consider any objections by the State to Lewis's motion to inspect that might have arisen subsequent to this appeal. If the circuit court orders inspection it should set a reasonable time within which the inspection is to be accomplished and any motion filed. The grounds of any challenges shall be limited to those (1) that affect the panel or venire from which the jury was selected that rendered the guilty verdicts underlying the instant judgments of conviction, and (2) that could not have been raised by a challenge to the array filed prior to the receipt of evidence at the aborted trial of February 20, 1991. *See* Md.Rule 4–312(a). If no motion challenging the selection of jurors who comprised that panel is timely filed, or if such a motion is filed and denied, then the judgments of conviction will stand. If the circuit court grants any such motion filed by Lewis, then the circuit court will vacate the judgments of conviction and order a new trial.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED WITH INSTRUCTIONS TO REMAND THIS CAUSE TO THE CIRCUIT COURT FOR WICOMICO COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY WICOMICO COUNTY, MARYLAND.*