**GOVERNMENT OF the CANAL ZONE,
Plaintiff-Appellee,**

v.

**Brian Kent DAVIS and Wolfgang
Ludwig Otto Gossow,
Defendants-Appellants.**

No. 78–5397.

United States Court of Appeals,
Fifth Circuit.

April 6, 1979.

Michael Pancer, San Diego, Cal., for Davis.

Michael D. Nasatir, Los Angeles, Cal., for Gossow.

Frank J. Violanti, U.S. Atty., Balboa, Canal Zone, for plaintiff-appellee.

Before GEWIN, HILL and FAY, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This case deals with the appellants' assertion that the District Court improperly denied their motion for inspection of jury records in connection with preparation and presentation of a motion challenging compliance with jury selection procedures under 28 U.S.C. § 1867.[1] We agree with their

---

1. The three pertinent subsections of § 1867 provide:

    (a) In criminal cases, before the voir dire examination begins, or within seven days af-

ter the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indict-

argument and accordingly reverse their convictions and remand the case to the District Court with instructions to permit the inspection.

Wolfgang Ludwig Otto Gossow and Brian Kent Davis were charged by the Government of the Canal Zone in a four-count information with conspiring to import cocaine under 21 U.S.C. § 963 and with conspiring to possess with intent to distribute under 21 U.S.C. § 846. The remaining two counts charged Davis with aiding and abetting Gossow in the possession with intent to distribute cocaine under 21 U.S.C. § 841 and 18 U.S.C. § 2 and with aiding and abetting Gossow in importing cocaine into the United States under 21 U.S.C. § 952 and 18 U.S.C. § 2.

Several pretrial motions were filed on behalf of Gossow, among which was a "Notice of Motion and Motion for Inspection, Reproduction and Copying of Records and Papers in the Custody of and Used by the Jury Clerk in Connection with the Jury Selection Process Pursuant to 28 U.S.C. § 1867(d)(f)." The motion regarding discovery concerning the jury selection process was denied, and the case came to trial on

April 3, 1978. The attorneys for Davis and Gossow observed that the jury panel appeared to consist entirely of Caucasian men and women, 90% of whom were between forty-five and fifty-five years old. On the basis of the denial of their pretrial motion concerning the jury selection process[2] and their observation concerning the uniformity of the jury panel, the appellants and their attorneys elected to waive a jury trial and proceed with a trial before the court on stipulated facts.

After presentation of the stipulated facts, the District Court found the appellants guilty of conspiring to import cocaine into the United States and sentenced them to serve ten years in custody and to a special parole term of five years. Davis and Gossow appeal their convictions, contending that: (1) the District Court's denial of their motion for inspection and copying of jury records constituted reversible error; (2) the District Court for the District of the Canal Zone was without jurisdiction over the offenses charged in the information; (3) the evidence against Davis was insufficient to support his conviction; and (4) the District Court erred in not limiting the maximum

ment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

.        .        .        .        .

(d) Upon motion filed under subsection (a), (b), or (c) of this section, containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title, the moving party shall be entitled to present in support of such motion the testimony of the jury commission or clerk, if available, any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence. If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the grand jury, the court shall stay the proceedings pending the selection of a grand jury in conformity with this title or dismiss the indictment, whichever is appropriate. If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the petit jury, the court shall stay the proceedings pending the selection of a petit jury in conformity with this title.

(f) The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except pursuant to the district court plan or as may be necessary in the preparation or presentation of a motion under subsection (a), (b), or (c) of this section, until after the master jury wheel has been emptied and refilled pursuant to section 1863(b)(4) of this title and all persons selected to serve as jurors before the master wheel was emptied have completed such service. The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion. Any person who discloses the contents of any record or paper in violation of this subsection may be fined not more than $1,000 or imprisoned not more than one year, or both.

2. The trial judge notified the appellants that any motion or objection made by either of them inured to the benefit of both of them. Hence, Davis is deemed to have joined in the jury selection discovery motion initially filed by Gossow.

sentence they could receive to five years in custody.

■ The appellants are correct in asserting that the District Court's denial of their motion for inspection and copying of jury records was reversible error. The Supreme Court's decision in *Test v. United States*, 420 U.S. 28, 95 S.Ct. 749, 42 L.Ed.2d 786 (1975), is dispositive of the issue. The Court held in *Test* that a litigant has an unqualified right to inspect jury lists under not only the plain text of the provisions of the Jury Selection and Service Act of 1968, 28 U.S.C. § 1867(f), but also the Act's overall purpose of insuring "grand and petit juries selected at random from a fair cross section of the community," 28 U.S.C. § 1861. Having determined that an order was necessary to gain access to the records and having made the appropriate motion with an accompanying affidavit,[3] the appellants' right to inspect under § 1867(f) was violated when the District Court denied the motion. Since the appellants' right to inspection was unqualified, whether or not the accompanying affidavit established a prima facie case of defective jury selection process is of no import. *Test v. United States*, 420 U.S. at 29 n. 2, 95 S.Ct. 749. "Indeed, without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge." *Id.* at 30, 95 S.Ct. at 750.

The Government argues that the appellants' failure to file a motion to dismiss for defective jury selection process coupled with their counselled jury waiver and trial before the court on stipulated facts constituted an abandonment of their right to challenge the jury selection process. In light of the facts in this case, the Government's argument is unpersuasive. Where, as here, a defendant is denied access to the very materials containing the information necessary to the filing of a motion to dismiss for defective jury selection, his failure to file a formal motion blindly and speculatively drafted will not be viewed as an abandonment of his right to inspection. Nor will the waiver of a jury trial serve as such an abandonment in these circumstances, for all that was waived was a trial by a jury of suspect composition. Had the appellants been informed of jury selection procedures by the granting of their motion to inspect the records of those procedures, their subsequent waiver of a jury trial would have presented a different issue. The denial of the motion made it impossible for them to make an informed waiver. The appellants qualified their waiver along these lines, and their actions cannot be said to have constituted an intelligent and intentional waiver of a trial before a representative jury. *See Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Indeed, in the stipulation submitted to the trial judge, the appellants asserted, and the Government agreed, that all pretrial motions, and rulings on them, would have the same force and effect as they would have had if the appellants had chosen a jury trial. The appellants expressly indicated their desire to appeal the denial of the motions. Although parties cannot always be assured that matters which they, themselves, deem appealable will necessarily be subject to appellate review, *see United States v. Wysocki*, 457 F.2d 1155, 1161–62 (5th Cir.), *cert. denied*, 409 U.S. 859, 93 S.Ct. 145, 34 L.Ed.2d 105 (1972), the overall context of this case belies the Government's contention that the appellants intelligently and intentionally waived appellate review of their unsuccessful attempt to exercise their right to inspect the jury records.

The appellants' three remaining contentions are without merit.

■ First, the United States District Court for the Canal Zone had jurisdiction over the offense of conspiracy to import cocaine into the Canal Zone. *See* 18 U.S.C. § 3241; 21 U.S.C. §§ 802(26) and 952(a); C.Z.Code tit. 3, § 141; H.R.Rep.No.1444,

---

3. The affidavit was to the effect that *Gossow's* attorney had learned that a court order was necessary to get the records.

91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin. News, pp. 4566, 4599.

■ Secondly, there was sufficient evidence to support Davis' conviction. Davis travelled extensively in Central and South America with Gossow and an unindicted female companion. The trio used Gossow's pickup truck, which had been exported from Panama to Equador, for transportation in South America. Davis financed his female companion's travels. Davis had possession of Gossow's truck for eight days and frequently left his female companion at the hotel in Huaychulo, Peru, while he ran unexplained errands. One of these absences lasted all night long. Davis was then very anxious to leave Huaychulo and never left the truck unattended until they reached Chile. The truck was shipped from Chile to Panama. Freight charges for the ten year old truck were in excess of one thousand dollars. Davis and Gossow intentionally circumvented customs inspection at Los Angeles International Airport by walking across the border at Tiajuana, Mexico. Davis made arrangements for Gossow and the female companion to fly back to Panama to retrieve Gossow's truck. Gossow's truck was searched by Canal Zone Customs Agents upon its arrival at Balboa, Canal Zone, and a cleverly concealed compartment in the bed of the truck containing forty-four pounds of cocaine was discovered. The entry to the concealed compartment was protected with a metal plate which in turn was covered by the rear bumper. Two of Davis' thumbprints were found on the metal plate leading to the compartment where the cocaine was concealed. Testimony from experts showed that Davis' thumbprints were so located on the metal plate that it would be impossible for them to have been left there unless the heavy rear bumper had first been removed so as to expose the concealed compartment. Viewing this evidence in the light most favorable to the Government, *Glasser v. United States*, 315

U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), there is ample evidence to show a conspiracy to import a large quantity of cocaine from South America into the United States as well as Davis' participation in that conspiracy.

■ The last of the appellants' arguments is that the District Court erred in not limiting their sentences to five years in custody, because the inclusion of cocaine in Schedule II with addicting opiates is not supported by any rational basis. They assert that the categorization of cocaine as a narcotic is contrary to all of the scientific evidence on the subject. We have recently examined this issue in *United States v. Solow*, 574 F.2d 1318 (5th Cir. 1978), where we explicitly upheld the constitutionality of the classification of cocaine as a narcotic drug controlled by the Comprehensive Drug Abuse and Control Act of 1970. 21 U.S.C. §§ 801–966. Hence, sentencing the appellants to ten years in custody was within the District Court's discretion.

In conclusion, we hold that the appellants were erroneously denied their right to inspect and copy jury records under 28 U.S.C. § 1867(f). We thus reverse their convictions and remand to the District Court so that their right may be properly exercised. The appellants will then be in a position to make informed decisions as to whether the jury selection process warrants challenge and as to whether they prefer trial by a representative jury or before the court.

REVERSED and REMANDED.