UNITED STATES of America, Appellee,

v.

Pablo MARCANO–GARCIA,

and

Nydia Cuevas-Rivera, Appellants.

No. 78–1499.

United States Court of Appeals,
First Circuit.

Argued Feb. 5, 1980.
Decided May 29, 1980.

---

6. United States/AR&S contract, § F.2(a), "Contractor Personnel".

7. *Id.* at § F.2(b).

8. *Id.* at § I(c)–(e).

Pedro J. Varela, Hato Rey, P. R., for appellants.

William C. Bryson, Atty., Dept. of Justice, Washington, D. C., with whom Jose A. Quiles, U. S. Atty., Old San Juan, P. R., and Daniel Lopez Romo, Asst. U. S. Atty., San Juan, P. R., were on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, WISDOM, Senior Circuit Judge.*

COFFIN, Chief Judge.

Appellants in this case, Pablo Marcano-Garcia and Nydia Cuevas-Rivera, claiming infringement on the full spectrum of rights guaranteed by the Bill of Rights, seek reversal of their convictions in the district court for the District of Puerto Rico for kidnapping and assaulting a foreign official and making extortionate demands in connection with those acts.

On the afternoon of June 3, 1978, appellants entered the Chilean Consulate in San Juan, Puerto Rico, and presented themselves to the Honorary Consul, Ramon Gonzalez Ruiz, as interested in business possibilities in Chile. After the Honorary Consul had escorted them into his private office, Marcano produced a revolver and ordered the Consul to lie on the floor. Cuevas then also drew a revolver, which she pointed at the Consul while Marcano tied his hands and feet with rope. Shortly thereafter, one Sergio Cavada, a Chilean national who was seeking renewal of his passport, entered the office. Marcano and Cuevas ordered him at gunpoint to lie on the floor and bound his hands and feet as they had done with the Consul.

Appellants identified themselves as members of a group advocating Puerto Rico's independence and explained that they sought certain concessions from the United States government. Specifically, Marcano said they wanted to obtain the release of Puerto Rican prisoners being held in the United States and to force cancellation of the Fourth of July celebration in Puerto Rico. Marcano also stated that he wanted

the Consul to read a statement to the news media favoring Puerto Rican independence and characterizing the government of Chile as "an assassin".

On the evening of July 3, the Consul was permitted to place a phone call to a friend of his, Bruno Harring. Immediately after the conversation began, however, Marcano interrupted and said that he had abducted the Consul and wanted his demands announced over the media and to officials of the United States government. Harring notified the FBI, who established telephone contact with Marcano. During that evening and the following morning, the FBI recorded several conversations with Marcano in which he recited his demands regarding the release of Puerto Rican prisoners and cancellation of the Fourth of July celebration. On the morning of July 4, two attorneys who knew appellants entered the consulate and convinced appellants to release their hostages and surrender.

Appellants were indicted on July 11, 1978, one week after their arrest. Their attorneys, Ricardo Rechani and Steve Segal, who had arranged for their surrender, were granted five days to obtain discovery from the government and an additional ten days to file pretrial motions. During this period, appellants' attorneys filed two motions: one for suppression of evidence pursuant to rule 41 of the Federal Rules of Criminal Procedure and another seeking reduction in the amount of appellants' bail. Then, on August 8, 1978, Rechani and Segal filed a "Motion Requesting Withdrawal as Court Appointed Attorneys", which recited "ideological differences" as the basis for the motion and noted that both of the appellants had requested new counsel. On August 10, appellants' new counsel filed eighteen motions addressing such issues as prejudicial pretrial publicity, government misconduct, and the procedures for selection of the jury panel, the majority of which were denied by the district court. Appellants' trial commenced on August 24, 1978.

* Of the Fifth Circuit, sitting by designation.

The jury found both Marcano and Cuevas guilty of violating 18 U.S.C. § 1201(a), which provides for punishment of up to life imprisonment for any person who "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise" any person who is a "foreign official, an internationally protected person, or an official guest as those terms are defined in [18 U.S.C. § 1116(b)]." Both were sentenced to twelve years imprisonment for this crime. Marcano was also convicted of assaulting a "foreign official" or "internationally protected person" in violation of 18 U.S.C. § 112(a) and making extortionate demands in violation of 18 U.S.C. § 878(b). He was sentenced to five years imprisonment for each of these two counts, to run concurrently with his sentence for kidnapping.

Appellants' first argument is that the district court "lacked jurisdiction" under 18 U.S.C. § 1201 because the Honorary Consul does not come within the scope of the terms "foreign official", "official guest", or "internationally protected person". Similarly, they assert that the evidence adduced at trial was insufficient to establish that the Honorary Consul fell within the class of persons protected under section 1201. Specifically, appellants contend that the Honorary Consul was not a "foreign official" because he testified that he was not paid a salary by the Chilean government, and that he was not an "internationally protected person" because honorary consuls are accorded less protected status than full consuls under the Vienna Convention on Consular Relations.

■ We find no merit in either of these arguments. Under 18 U.S.C. § 1116(b), incorporated by sections 1201 and 112, a "foreign official" is defined as "any person of foreign nationality who is duly notified to the United States as an officer or employee of a foreign government . . . and who is in the United States on official business." The evidence at trial established that the Honorary Consul was a Chilean national and that he had been notified to the United States Department of State as a consular representative of the Chilean government. Most significantly, the Honorary Consul testified that he worked almost full-time performing such official duties as renewing passports and processing other official papers, for which he received a subsidy from the Chilean government. His activities thus brought him within the intended ambit of the statute. *See* S.Rep. No. 92–1105, 92d Cong., 2d Sess. 1, *reprinted in* [1972] U.S.Code Cong. & Admin.News, p. 4316. Even if the Honorary Consul is not a "foreign official", we think it is clear that he is an "internationally protected person". Although under the terms of the Vienna Convention such officials are granted less extensive rights and protections than career consular officials, we can discern no basis in the statute for distinguishing honorary from career consuls on the basis of the quantum of protection they are given under international law.

■ The second ground for reversal urged by appellants is that each of the statutes under which one or both were convicted, 18 U.S.C. §§ 1201, 112 and 878, are unconstitutionally vague and overbroad. Their vagueness claims attack specifically the terms "kidnap" and "holds for ransom or reward or otherwise" in section 1201(a), "assaults" and "offers violence" in section 112(a), and "extortionate demand" in section 878(b). In essence, appellants argue that these provisions do not "provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal." *Buckley v. Valeo*, 424 U.S. 1, 46, 96 S.Ct. 612, 647, 46 L.Ed.2d 659 (1976). We disagree.

First, the indictment charges that appellants "did willfully and unlawfully seize and confine" the Honorary Consul. This language is clear both on its face and in its applicability to appellants' act in this case. And the term "holds for ransom . . . or otherwise", while perhaps not clear on its face, has been construed by the Supreme Court as contemplating nonpecuniary motives such as those in this case. *See United States v. Healy*, 376 U.S. 75, 81–82, 84 S.Ct. 553, 557, 11 L.Ed.2d 527 (1964). Second, we

have construed the term "assault" as including conduct "intended to put a victim in fear". *See United States v. Frizzi*, 491 F.2d 1231 (1st Cir. 1974); *United States v. Maynard*, 452 F.2d 1087 (1st Cir. 1971). The well-settled meaning of this term, combined with its more literal companion term "offer violence", left little need for appellant Marcano to "speculate" whether his use of a loaded gun to keep the Consul in custody would constitute conduct proscribed by section 112(a). Finally, the term "extortionate demand" imports into section 878(b) the term "extortion", which has a well-settled meaning under federal law, *see, e. g., United States v. Hathaway*, 534 F.2d 386, 395–96 (1st Cir. 1976), and has on numerous occasions been found not to be unconstitutionally vague, *see, e. g., United States v. Rosa*, 560 F.2d 149, 154 n. 5 (3d Cir. 1977), *cert. denied*, 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 135 (1978).

■ Nor do we find any merit in appellants' contention that these statutory provisions are overbroad in their restriction of protected political speech. While these acts may have been performed for reasons of political protest, such violent acts are not entitled to First Amendment protection. In short, the statutes' "plainly legitimate sweep" makes no substantial encroachment on political communication. *See Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973).

■ We next address appellants' argument that the district court committed reversible error in refusing to dismiss their indictments or continue their trial to a later date due to excessive pretrial publicity. They assert that "sensationalist" stories appearing in the newspapers so poisoned the atmosphere surrounding their case that an impartial jury was a practical impossibility. We do not find, however, that either the nature or the extent of the publicity surrounding their seizure of the consulate and

their subsequent arrest required a continuance or rendered the trial that took place unfair. Unlike the cases cited by appellants, *e. g., Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), the newspaper stories pertaining to this case appear to have been objective reporting, not the type of inflammatory prose found prejudicial in *Sheppard*. Moreover, appellants cite only six stories appearing more than two days after the incident. Finally, the district judge took significant measures to ameliorate any prejudice resulting from pretrial publicity by granting extra peremptory challenges in selecting the jury, conducting extensive voir dire of the jurors, enjoining counsel from commenting to the press about the case, and sequestering the jury during the trial.[1]

■ Appellants' next argument is that they were denied effective assistance of counsel because of a conflict of interest tainting the services of their attorneys, Rechani and Segal. The alleged conflict was not the usual one involving an attorney serving different clients with different interests. Here the conflict was between the clients' interest and that of their attorneys. This conflict allegedly arose out of certain actions of Rechani and Segal after entering the Chilean consulate to negotiate appellants' surrender, i. e., cleaning and hiding a gun used by one of the appellants, which exposed them to the possibility of criminal prosecution and accordingly put pressure on them to gear all their efforts to avoiding trial. So motivated, the argument goes, the attorneys failed to make pretrial motions and too readily succumbed to promoting a plea bargaining agreement.

Appellants' present counsel took over the defense fourteen days before the trial, filing some eighteen pretrial motions. The trial judge, though deeming them untimely, considered the motions on their merits.

1. We reject without discussion three additional grounds for reversal asserted by appellants: that the trial judge erred in allowing introduction of certain pieces of evidence, that appellants were denied a fair trial by the refusal of the court to conduct the trial in Spanish, and that the sentences imposed were unconstitutionally harsh and constituted an abuse of the trial judge's discretion. In each instance either clear precedent or statutory provision refutes appellants' arguments.

Appellants claim, nevertheless, that time pressures and the lack of a continuance to allow new counsel to substantiate their claims of prosecutorial misconduct and a discriminatory jury array underscored the critical and fateful role that Rechani and Segal played in their short-lived representation.

Appellants rely on *United States v. Hurt*, 543 F.2d 162, 165–68 (D.C.Cir.1976), in which the court noted that effective assistance of counsel is impossible when the attorney-client relationship is corrupted by competition between the client's interests and the personal interests of his attorney. *See Von Molktke v. Gillies*, 332 U.S. 708, 725, 68 S.Ct. 316, 324, 92 L.Ed. 309 (1948) (Sixth Amendment right to counsel "contemplates the services of an attorney devoted solely to the interests of his client"). In *Hurt*, the court refused to engage in harmless error analysis, concluding that because of the difficulty of determining what counsel would have done at trial had there been no conflict, "prejudice in the circumstances involved here is incapable of any sort of measurement." 543 F.2d at 168.

We do not have occasion to disagree with the analysis of the court in *Hurt*, but find instead that appellants misapprehend the issue presented in this case. The threshold question, as we see it, is whether appellants were in fact deprived of effective assistance of counsel, not whether in light of such a deprivation they are entitled to a new trial. We would find it incongruous to hold that any time an attorney recognizes that his interests conflict with those of his client, the client is entitled to a new trial regardless of how far the case has proceeded at the time his counsel withdraws. Had Rechani and Segal withdrawn only at the end of appellants' trial, we would have then faced the issue of prejudice—and would have to decide whether or not to adopt the

approach in *Hurt*. But where, as here, counsel withdrew before commencement of the trial, we must first resolve the question of ineffective assistance by ascertaining whether substitute counsel adequately represented appellants.

We face two distinct questions. The first is simply whether substitute counsel had sufficient time before trial to prepare an effective defense. The answer is clearly "yes". In dealing with this issue, courts consider the time available, the complexity of the factual and legal issues, and the way in which counsel utilized the available time.[2] In this case, the circumstances surrounding appellants' arrest and the factual basis for their indictment were straightforward. Nor do we find, notwithstanding the numerous grounds raised on appeal, that the legal questions were particularly complex. We conclude that substitute counsel had adequate time prior to the commencement of trial to prepare their defense and that they diligently pursued their obligation to do so.

The second question we must address is whether the allegedly tainted representation of Rechani and Segal had effects that endured beyond their withdrawal and prevented substitute counsel from adequately presenting appellants' case to the court. The government points out that appellants never entered into the plea agreement urged by Rechani and Segal and that the court did consider the merits of appellants' pretrial motions. Appellants argue, however, that because Rechani and Segal did not inform their successor counsel of their conflict of interest, new counsel "were inhibited in their ability to represent appellants." We find most of the reasons given by appellants in support of this assertion to be too speculative to merit serious attention. The only argument that appears at least plausible is that substitute counsel

2. *See, e. g., United States ex rel. Williams v. Twomey*, 510 F.2d 634 (7th Cir. 1975) (appointment of counsel 3 days before trial did not meet requirement of effective assistance of counsel where attorney met with client for only ten minutes before trial); *United States v. Junne*, 458 F.2d 1156 (3d Cir. 1972) (rejecting claim of ineffective assistance when counsel was appointed two days before trial); *United States v. Hill*, 310 F.2d 601 (4th Cir. 1962) (finding ineffective assistance of counsel when attorney for defendant was appointed after two-thirds of trial completed).

might have been able to obtain the continuance necessary to bolster some of their pretrial motions if they had had this information. The short answer to this argument is that appellants themselves could have informed their new counsel of this conflict. When a client has failed to apprise his counsel of information crucial to his defense, we decline to find counsel's failure to act upon such undisclosed information a basis for a new trial on the grounds of ineffective assistance of counsel. Viewing the circumstances of this case as a whole, we conclude that appellants had effective assistance of counsel at trial.

■ Finally, we consider appellants' challenge to the jury array at their trial. In one of their pretrial motions, appellants asserted that the jury pool had been selected in violation of both the Constitution and the Jury Selection and Service Act, 28 U.S.C. §§ 1861–1869, and requested a continuance in order to submit affidavits and demographic data in support of this motion. Appellants also filed a second motion seeking access to the jury selection records in the possession of the court clerk as provided by 28 U.S.C. § 1867(f). The district court denied both of these motions because they were "unsupported by any 'sworn statement of facts which, if true, would constitute a substantial failure to comply' with the provisions of the Jury Selection Act."

Appellants argue on appeal that the district court erroneously required them to provide a "sworn statement of facts" in support of their motion to inspect the court's jury selection records, and thus prevented them from establishing a factual basis for their motion to strike the jury. They point out, and the government does not disagree, that section 1867(f) explicitly grants parties a right "to inspect, reproduce, and copy" such records "during the preparation and pendency" of a motion challenging the selection of a jury. In *Test v. United States*, 420 U.S. 28, 30, 95 S.Ct. 749, 750, 42 L.Ed.2d 786 (1975), the Supreme Court emphasized that under this provision "a litigant has essentially an *unqualified* right to inspect jury lists." Such a right,

the Court explained, is required since a party would otherwise be "unable to determine whether he has a potentially meritorious jury challenge." *Id.*

Although we agree with appellants that the district court erred in denying their motion for access to the jury lists, we accept the government's argument that this error alone does not mandate vacation of appellants' convictions. The only case we are aware of reversing a conviction on the basis of such error, *Canal Zone v. Davis*, 592 F.2d 887 (5th Cir. 1979), is distinguishable. In that case the defendants had waived their right to a jury trial after the court's denial of their motion to inspect. Thus, in *Davis*, the erroneous denial of the motion could have prejudiced the defendants' exercise of their right to a jury trial in a way that it could not have in this case. Rather than reverse appellants' convictions, therefore, we remand the case to the district court to allow appellants' counsel to inspect the relevant documents as permitted by section 1867(f) and renew their challenge to the jury selection procedures of the district court. *See Test v. United States, supra,* 420 U.S. at 30, 95 S.Ct. at 750. In order to facilitate the disposition of this case, we will retain jurisdiction to review the district court's ruling on appellants' motion to strike the jury array upon timely application of either party.

*The case is remanded to the district court for proceedings consistent with this opinion; on all other grounds the judgment of the district court is affirmed.*