March 23, 1994 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1584

UNITED STATES OF AMERICA,
Appellee,

v.

ANGEL A. SOLDEVILA-LOPEZ,
a/k/a "ANGELO,"
Defendant, Appellant.

ERRATA SHEET

The opinion of this Court issued on March 3, 1994, is
amended as follows:

Page 2, line 3 - delete "by a jury."

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1584

UNITED STATES OF AMERICA,

Appellee,

v.

ANGEL A. SOLDEVILA-LOPEZ,
a/k/a "ANGELO,"

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jos Antonio Fust , U.S. District Judge]

Before

Torruella, Circuit Judge,

Coffin, Senior Circuit Judge,

and Boudin, Circuit Judge.

Henry F. Furst for appellant.

Jorge E. Vega-Pacheco, Assistant United States Attorney,

with whom Guillermo Gil, United States Attorney, was on brief for

appellee.

March 2, 1994

TORRUELLA, Circuit Judge. On August 17, 1992, a jury

found defendant-appellant Angel A. Soldevila-L pez ("Soldevila")

guilty jury of four counts of conspiracy to possess with the

intent to distribute fifty kilograms of cocaine and using a

communication facility in the commission of the offense, in

violation of 18 U.S.C. 2 and 21 U.S.C. 841(a)(1), 843(b),

and 846.

On November 27, three days before sentencing date of

November 30, trial counsel for Soldevila, Nicol s Nogueras

("Attorney Nogueras") raised the issue of Soldevila's competence

to be sentenced in a motion requesting psychiatric and

psychological examination. The district court granted

Soldevila's motion.

Following a psychiatric evaluation by both a court

appointed psychiatrist and a court appointed psychologist, a

competency hearing was set for May 24, 1993. At the hearing,

upon the suggestion of counsel for Soldevila, the court concluded

that Soldevila should be reevaluated on that day to determine his

competency for sentencing purposes. Dr. Scott A. Duncan, the

court appointed psychologist, reevaluated Soldevila and the

hearing continued on the next day.

On May 25, doctor Duncan presented an addendum to his

previous evaluation of Soldevila, stating for the first time that

Soldevila was "malingering" (i.e., feigning incompetency). The

district court denied Soldevila's motion for a continuance, found

Soldevila competent to be sentenced and imposed sentence.

-2-
2

Soldevila appeals from the final judgment of conviction and

sentence.

BACKGROUND

Soldevila has a recent history of psychiatric problems.

As recently as the spring of 1992 he was receiving psychotherapy,

including prescription medications for his illness.1 This

information, however, was not brought to the attention of the

district court at any time during trial or at anytime prior to

Attorney Nogueras' motion for psychiatric and psychological

evaluation of November 27, 1992. In the November 27 motion,

Attorney Nogueras stated that Soldevila, in conversation with

counsel, "looks and reacts introvertedly, like absent from the

conversation, very depressed, and in a mental and emotional

condition that requires a psychiatric and psychological

examination before sentencing." Attorney Nogueras indicated that

he had observed related symptoms during trial, but had attributed

them to Soldevila's anxiety, believing they were "due to the

tension created by his arrest, imprisonment and trial."

Following trial, Attorney Nogueras discovered additional facts

which led him to conclude that he had "undervalued or

underestimated the nature and extent of [Soldevila's] mental and

1 Appellate counsel obtained Soldevila's medical history from
Soldevila's daughter, Blanca. Much of the history is contained
in photostatic copies of prescriptions appended to Soldevila's
brief and in a letter dated May 10, 1993, written by Blanca in
which she observes that she had supplied Attorney Nogueras, with
various medical records in June of 1992. She also stated that
she had suggested to Nogueras that he submit a motion to provide
Soldevila with proper medical treatment but that her advice was
not heeded.

-3-
3

emotional condition at the time of the alleged commission of the

offense . . . and at the time of trial." In particular, in a

November 23, 1992 conversation between counsel and Dr. Jorge

Prieto, the prison's doctor, doctor Prieto, informed Attorney

Nogueras that Soldevila was prescribed "Xanax," used for the

management of anxiety disorder or the short term relief of

symptoms of anxiety, Physicians' Desk Reference at 2456 (48th ed.

1994) (herinafter "PDR"), and "Ativan"2 during trial in doses

"[c]ounsel believed did not affect defendant's awareness of the

consequences of the proceedings against him." Doctor Prieto said

that his observations of Soldevila on June 29 (i.e. prior to

trial), led him to conclude that Soldevila had a "psychiatric

condition." Doctor Prieto also indicated that, by May 27, 1992,

Soldevila "was not communicative and had lapses of absence."

Therefore, Attorney Nogueras felt that a psychiatric examination

was needed.

In response to Soldevila's motion, the district court

judge stated that he had seen Soldevila "interact with counsel

during the case, and [Soldevila] was fully oriented,

participated, from what I could see from the bench, fully reacted

when there was something to react to. [Sic] Smiled and dealt

with the points that were scored when the defense scored such

points. It was quite obvious that the person that was before me

2 Ativan is an antianxiety agent which "is not recommended for
use in patients with a primary depressive disorder or psychosis."
PDR at 2516. With regards to this medication, the PDR warns that
"[i]n patients with depression accompanying anxiety, a
possibility for suicide should be borne in mind." Id.

-4-
4

here was not a zombie of any kind. He was a person who was here

oriented in all spheres." Still, the district court granted

Soldevila's motion and ordered that Soldevila undergo

psychological and psychiatric evaluation at the Springfield,

Missouri Medical Center for Federal Prisoners to determine

whether he suffered from a mental disease and then return to

Puerto Rico for final sentencing. The district court entered a

provisional sentence against Soldevila pursuant to 18 U.S.C.

4244(d).

On March 9, the Bureau of Prisons issued a forensic

evaluation of Soldevila, signed by Scott A. Duncan, Psy.D,

Forensic Studies Coordinator of the United States Penitentiary in

Atlanta ("doctor Duncan"), Angel L pez M.Ed. and Sara

Boucchechter, M.A.. The report concluded that Soldevila suffered

from "major Depression, Recurrent, With Psychotic Features, Mood

Congruent."

On April 20, 1993, in response to the court's inquiry

regarding "the approximate time frame that Mr. Soldevila-L pez

suffered from psychotic depression," doctor Duncan submitted to

the district judge an "Addendum to Psychological Evaluation."

In this addendum, doctor Duncan concluded that, in his

professional opinion, Soldevila's psychotic depression

"originated approximately in September/October 1992 as a result

of stress stemming from being found guilty of his current

charges, being tried . . . and being housed in a stressful

environment."

-5-
5

On April 27, 1993, the district court ordered that

Soldevila be transferred to Puerto Rico no later than May 20,

1993, for a competency hearing to be held on May 24, 1993. On

May 12, 1993, Henry F. Furst, current appellate counsel for

Soldevila, ("Attorney Furst") sent Attorney Nogueras a letter via

telefax informing Nogueras that the Soldevila family wanted a

psychiatrist, Dr. Steven S. Simring, to examine Soldevila as soon

as possible. Soldevila was transferred to the Metropolitan

Detention Center in Guaynabo, Puerto Rico ("MDC") on May 20,

1993, four days before the competency hearing was to take place.

Attorney Nogueras moved for a continuance, in order for doctor

Simring to evaluate Soldevila and be presented as an expert

witness on Soldevila's behalf. The district court denied the May

21, 1993 motion for a continuance.

On the same day, Soldevila filed a motion requesting

the district court's permission to have doctor Simring interview

him for a psychiatric assessment, to allow Attorney Furst to

appear at the competency hearing, and to duplicate copies of

records, transcripts and tapes used during the trial. The

district court granted Soldevila's latter motion in all respects.

The competency hearing took place on May 24 and 25,

1993. On May 24, Attorney Nogueras told the court he had visited

Soldevila recently but that Soldevila was not communicative.

Attorney Nogueras said he found "[him]self completely

incapacitated to convey to [Soldevila] the meaning of this

hearing." Attorney Nogueras further informed the court that one

-6-
6

of the prison guards referred to Soldevila as "my Valium man."

Attorney Nogueras also alluded to the availability of doctor

Simring to examine Soldevila, but suggested this was not possible

given the court's denial of Soldevila's motion for a continuance.

Doctor Duncan then testified that when Soldevila arrived at the

United States Penitentiary in Atlanta, on February 3, 1993,

Soldevila was suicidal and possibly suffering from psychosis. He

was unable to concentrate sufficiently to complete psychological

testing. Soldevila was then administered "Haldol," an

antipsychotic medication. In doctor Duncan's last contact with

Soldevila, ten days prior to the hearing, Soldevila appeared

"oriented to time, place, person, and reason of being there."

Doctor Duncan indicated that he stood by his previous report of

March 9 in which he gave his opinion that Soldevila needed

immediate hospitalization for treatment for psychotic depression

and that he should remain on "Haldol."

At the request of Attorney Nogueras, the proceedings

were adjourned to permit doctor Duncan to interview Soldevila and

to review his medical charts and determine whether he had

continued to take the medication prescribed to him in Atlanta.

The court directed doctor Duncan to provide the defense access to

information regarding the medication Soldevila was receiving at

MDC, as well as a copy of Soldevila's medical chart.3 The court

3 After Attorney Nogueras asked the court to order him access to
information regarding the medication Soldevila had been taking at
MDC, the following exchange took place:

MR. NOGUERAS: Your Honor, of course, your

-7-
7

also indicated that doctor Simring, would be permitted to examine

Soldevila if he flew to Puerto Rico.

On May 25, Soldevila filed a motion requesting further

psychiatric evaluation. The motion stated that the government

had not complied with the court's May 24 order to provide defense

counsel a copy of Soldevila's chart and requested that the

government comply. Attached to the motion was the May 10th

letter sent to doctor Duncan by Soldevila's daughter, Blanca,

setting forth Soldevila's medical history of psychiatric

problems. Attorney Nogueras indicated that he was attempting to

locate Dr. Agust n Garc a, a local psychiatrist or clinical

psychologist, to analyze Soldevila's psychiatric condition.

Also, on May 25, doctor Duncan filed a second addendum

to the forensic report. The addendum concluded that Soldevila

was malingering. Doctor Duncan indicated that the previous day

he reviewed Soldevila's medical records and met with Dr. Vasco

Daub n, the chief psychologist at MDC, and together they

conducted an interview of Soldevila.

During the interview, doctors Duncan and Daub n gave

Soldevila a neuropsychological memory test for malingering,

called the Rey 15-item test. Because Soldevila's performance was

Honor has to understand that if we get the
information this afternoon, we do have to
make a decision in regard to whether we would
be then having the time to get to doctor
Simring to react on this information.

THE COURT: Believe me, I will give you the
time you need. Just remember also that you
have had since November 3rd [sic] to do this.

-8-
8

lower than that expected of even someone who was severely brain

damaged, doctor Duncan concluded Soldevila was malingering. As

further evidence of malingering, doctor Duncan indicated that

Soldevila claimed to have practically every symptom about which

he was asked, whether or not they were actually symptoms of

psychosis. Additionally, Soldevila complained of hearing voices

primarily at night, a time of day when his use of "Haldol" was in

fact maximized. On occasion, Soldevila was able to understand

questions asked him in English and to respond in Spanish, an

ability requiring high cognitive skills, inconsistent with

psychosis. Doctor Duncan concluded that he had seen nothing that

would indicate Soldevila was incapable of understanding the

charges or cooperating with his lawyer and that he was competent

for sentencing purposes. Doctor Daub n testified to his

participation in the interviews of Soldevila and agreed with

doctor Duncan's diagnosis of malingering.

On May 25, 1993, the court found that Soldevila was

competent to be sentenced. The court pointed out that, until the

verdict, there had been no indication that Soldevila had any kind

of mental defect that would have impeded the trial. The court

found that Soldevila "understood what was happening and . . .

assisted his lawyer in the preparation of the case." The

district court judge further stated that "[h]ad it been

different, I would have been notified by Mr. Nogueras, and he did

not tell me anything at the time." The court found that once

found guilty and placed in the Puerto Rico State penitentiary,

-9-
9

Soldevila became depressed and psychotic, but that, he was

prescribed medication and presently "is competent to be

sentenced."

On appeal, Soldevila argues that (1) Attorney Nogueras'

failure to timely investigate and argue Soldevila's lack of

competency to stand trial denied Soldevila effective assistance

of counsel; (2) Attorney Nogueras had an actual conflict of

interest with Soldevila and the district court erred in failing

to bring this conflict to the attention of Soldevila; and (3) the

district court erred in refusing to grant Soldevila's motion for

a continuance of the competency hearing and in finding that

Soldevila was competent to be sentenced.

INEFFECTIVE ASSISTANCE OF COUNSEL

Soldevila's claim that trial counsel's failure to

timely investigate and argue Soldevila's lack of competency to

stand trial denied Soldevila effective assistance of counsel is

raised for the first time on direct appeal. In this circuit "a

fact-specific claim of ineffective legal assistance cannot be

raised initially on direct review of a criminal conviction, but

must originally be presented to the district court." United

States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991), cert.

denied, 112 S. Ct. 986 (1992) (citations omitted). An exception

to this rule exists "where the critical facts are not genuinely

in dispute and the record is sufficiently developed to allow

reasoned consideration of an ineffective assistance claim." Id.

(citations omitted). Under such circumstances, "an appellate

-10-
10

court may dispense with the usual praxis and determine the merits

of such a contention on direct appeal." Id. (citations omitted).

The present case does not fall within this exception. In

determining the merits of a claim for ineffective assistance of

counsel, our review of counsel's performance is "not in

hindsight, but based on what the lawyer knew, or should have

known, at the time his tactical choices were made and

implemented." United States v. Natanel, 938 F.2d 302 (1st Cir.

1991). In the present case, the district court did not make any

findings of critical facts such as when Attorney Nogueras became

aware of Soldevila's psychiatric history and the exact nature of

that history that would enable us to determine what Attorney

Nogueras "knew or should have known" at different stages during

his representation of Soldevila. Neither are these facts clear

from the record. The proper method for pursuing claims of this

nature is through a collateral proceeding in district court under

28 U.S.C. 2255 so that proper factual determinations can be

made. United States v. Sutherland, 929 F.2d 765, 774 (1st Cir.

1991), cert. denied, 112 S. Ct. 83 (1991) (citations omitted).

CONFLICT OF INTEREST

Soldevila argues that Attorney Nogueras had an actual

conflict of interest with Soldevila and that such conflict

requires the reversal of Soldevila's conviction. Soldevila

contends that the conflict developed after Attorney Nogueras

realized that he had erred by failing to raise the issue of

Soldevila's mental competence at an earlier stage in the

-11-
11

proceedings. At that point, Attorney Nogueras had an interest in

raising the competency issue to appease Soldevila and Soldevila's

family, but also had an interest in losing the issue on the

merits to show that he was not at fault for having failed to

raise it in a timely fashion. Indeed, the worst case scenario

for Attorney Nogueras, argues Soldevila, would have been for the

court to have found that the competency issue may have had merit

but was waived or was now otherwise not susceptible to definitive

resolution. These potential problems for Attorney Nogueras were

neatly resolved by the court's denial of the defense claim on the

merits.

Although Soldevila's claim of actual conflict of

interest is, in effect, a claim of ineffective assistance of

counsel, we find the record "sufficiently developed to allow

reasoned consideration" of this particular claim on direct

appeal. See Natanel, 938 F.2d at 309; see discussion infra p.9.

Soldevila did not object to any conflict of interest at

trial. In Cuyler v. Sullivan, 446 U.S. 335 (1980), the Supreme

Court established that "[i]n order to establish a violation of

the Sixth Amendment, a defendant who raised no objection at trial

must demonstrate that an actual conflict of interest adversely

affected his lawyer's performance." Cuyler, 446 U.S. at 348

(footnote omitted). Although this standard was first developed

in the context of counsel's joint representation of criminal

defendants, it has been applied generally to other conflict of

interest situations, including alleged conflicts between counsel

-12-
12

and his or her client. United States v. Rodr guez, 929 F.2d 747,

749 (1st Cir. 1991) (citations omitted).

It is well settled that "some conflicts of interest so

affront the right to effective assistance of counsel as to

constitute a per se violation of the [S]ixth [A]mendment."

United States v. Aiello, 900 F.2d 528, 531 (2d Cir. 1990) (citing

Cuyler, 446 U.S. at 349-50). Such is the case where a lawyer

suffers from an actual conflict of interest that prevents him or

her from presenting a vigorous defense of a defendant. United

States v. Eisen, 974 F.2d 246, 264 (2d Cir. 1992). "Upon a

showing of such a conflict, a defendant need not demonstrate

prejudice because a conflict inhibiting a lawyer's performance is

such an affront to the right to effective assistance of counsel

that . . . [it] demonstrates a denial of that right." Id. See

also United States v. Marcano-Garc a, 622 F.2d 12, 17 (1st Cir.

1980) (citing United States v. Hurt, 543 F.2d 162, 165-68 (D.C.

Cir. 1976)) (effective assistance of counsel is impossible when

the attorney-client relationship is corrupted by competition

between the client's interests and the personal interests of his

attorney).

This circuit has held that in order to show an actual

conflict of interest, a defendant must show that (1) the lawyer

could have pursued a plausible alternative defense strategy or

tactic and (2) the alternative strategy or tactic was inherently

in conflict with or not undertaken due to the attorney's other

interests or loyalties. Guaraldi v. Cunningham, 819 F.2d 15, 17

-13-
13

(1st Cir. 1987) (citations and quotations omitted). Courts have

recognized actual conflicts of interest between an attorney and

his client when pursuit of a client's interests would lead to

evidence of an attorney's malpractice. See United States v.

Ellison, 798 F.2d 1102, 1106-08 (7th Cir. 1986), cert. denied,

479 U.S. 1038 (1987) (actual conflict where, in pro se hearing,

defendant alleged information which, if true, counsel

acknowledged, would be tantamount to malpractice on behalf of

counsel); see also Mathis v. Hood, 937 F.2d 790, 795 (2d Cir.

1991) (finding actual conflict of interest in lawyer's

representation of defendant during appeal where defendant filed a

grievance with disciplinary committee prior to appeal due to

attorney's delay in filing appellate brief).

In the present case, Soldevila has not made the

requisite showing of an actual conflict of interest. Soldevila

has not shown that Attorney Nogueras did not undertake an

alternative strategy or tactic due to Attorney Nogueras' other

interests or loyalties. The circumstances alleged by Soldevila,

as a matter of law, do not amount to an actual conflict of

interest between Attorney Nogueras and Soldevila. Unlike the

circumstances presented in Ellison or Mathis, at the time

Attorney Nogueras represented Soldevila, both at trial and during

the competency hearing, Soldevila had neither accused Attorney

Nogueras of malpractice nor filed any grievance regarding

Attorney Nogueras' representation. Neither are the circumstances

of this case akin to those which in which an actual conflict of

-14-
14

interest amounting to a per se violation of the Sixth Amendment

has been found.4 Soldevila's claim that Attorney Nogueras had a

conflict of interest during his representation is based on mere

speculation. "A theoretical or merely speculative conflict of

interest will not invoke the per se rule." Id. (citing United

States v. Aeillo, 900 F.2d 528, 530-31 (2d Cir. 1990)).5

Soldevila further argues that the court's failure to

warn Soldevila of the serious conflicts lurking in his continued

representation by Mr. Nogueras deprived him of due process and of

effective assistance of counsel.

The Constitution does not require a trial court to warn

a defendant about the risk of conflict in every case. Guaraldi

4 Per se Sixth Amendment violations have been found where trial

counsel was implicated in the crime for which his client was on
trial, Marcano-Garc a, 622 F.2d at 17 (citing United States v.

Cancilla, 725 F.2d 867 (2d Cir. 1984)), and where a defendant was

represented by a person not authorized to practice law. Marcano-

Garc a, 622 F.2d at 17 (citing Solina v. United States, 709 F.2d

160 (2d Cir. 1983)).

5 Because Soldevila has failed to show an actual conflict of
interest, in order to prevail on his claims of ineffective
assistance of counsel, "he must overcome the presumption that his
counsel's conduct was reasonable by satisfying the two pronged
standard of Strickland v. Washington, 466 U.S. 668 (1984). [He]

must show (1) that counsel's representation fell below an
objective standard of reasonableness under prevailing
professional norms and (2) a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding
would have been different." Eisen, 974 F.2d at 265 (citing

Strickland v. Washington, 466 U.S. at 694 (internal quotations

and citations omitted)).

We express no view on whether Soldevila's allegations satisfy
this standard as Soldevila claims only that Attorney Nogueras had
an actual conflict of interest with Soldevila and we believe that

any other claims of ineffectiveness of counsel that may arise in
the present case should not be addressed on direct appeal.

-15-
15

v. Cunningham, 819 F.2d at 18. "Defense counsel have an ethical

obligation to avoid conflicting representations and to advise the

court promptly when a conflict of interest arises during the

course of trial. . . . Unless the trial court knows or

reasonably should know that a particular conflict exists, the

court need not initiate an inquiry." Id. at 18 (alteration in

original) (quoting Cuyler, 446 U.S. at 346-47).

We have not found an actual conflict of interest that

affected Soldevila's trial, thus the trial court could not have

known of one. "We see no 'special circumstances' that gave rise

in this case to greater potential conflicts of interest than

those that exist whenever a . . . lawyer" raises any issue in a

proceeding that if raised earlier would have been more

advantageous to his or her client. See id. Hence, we conclude

that the district court's failure to advise Soldevila of possible

conflicts of interest and the related risks of his continued

representation by Attorney Nogueras did not violate his

constitutional rights.

REFUSAL TO GRANT A CONTINUANCE & FINDING OF COMPETENCY

Soldevila contends that in light of the last minute

diagnosis of malingering, the district judge improperly denied a

continuance that would have allowed Soldevila to be examined by

his own expert and subsequently erred in finding that Soldevila

was competent to stand trial.

We review the district court's refusal to grant a

continuance for abuse of discretion. United States v. Rodr guez

-16-
16

Cort s, 949 F.2d 532, 545 (1st Cir. 1991). Limits on the court's

discretion to grant a continuance are imposed by defendant's

constitutional rights, including his rights to assistance of

counsel and to the testimony of witnesses on his behalf. United

States v. Waldman, 579 F.2d 649 (1st Cir. 1978) (citations

omitted). "Only 'unreasonable and arbitrary insistence upon

expeditiousness in the face of justifiable request for delay'

constitutes an abuse of discretion." Rodr guez Cort s, 949 F.2d

at 545 (quoting United States v. Torres, 793 F.2d 436, 440 (1st

Cir.), cert. denied, 479 U.S. 889 (1986)).

In reviewing the district court's refusal to grant a

continuance for further psychiatric evaluations we consider: (1)

the extent of Soldevila's diligence in preparing his defense

prior to the date set for hearing; (2) the likely utility of the

continuance if granted; (3) the inconvenience to the court and

the opposing party, including witnesses; and (4) the extent to

which the moving party may have suffered prejudice from the

denial. United States v. Flynt, 756 F.2d 1352, 1359 (9th Cir.

1985), amended, 764 F.2d 675 (9th Cir. 1985); United States v.

Pope, 841 F.2d 954, 956 (9th Cir. 1988).

1. Diligence

It is clear that Attorney Nogueras could have exercised

greater diligence locating additional psychiatrists to examine

his client prior to the competency hearing. As pointed out by

appellate counsel for Soldevila, after Attorney Nogueras raised

the issue of Soldevila's competence to be sentenced, "defense

-17-
17

counsel did nothing to support his previous suggestion that

defendant may have been incompetent . . . from November 30, 1992

to May 19, 1993, trial counsel did nothing, waiting virtually

until the eve of the next proceedings to take any action. Thus,

defense counsel never retained a psychiatrist to examine

defendant, nor did he take any other action calculated to flesh

out facts supporting the defense position."

At no time prior to May 25, the final day of the

competency hearing, did anyone contend that Soldevila was

malingering. Attorney Nogueras was not given doctor Duncan's

final report, concluding that Soldevila was malingering, until

after 4:00 p.m. on May 25, only moments before the final

hearing. In light of this surprise, attorney Nogueras was unable

to prepare any response to doctor Duncan's allegedly surprising

conclusion. Attorney Nogueras was diligent in responding to the

allegations that Soldevila was malingering as soon as possible.

By no means do we endorse Attorney Nogueras' behavior

in waiting until the last minute to try to obtain his own

experts, followed by what could be perceived as a strategy to buy

more time by first asking the court for a recess in order for

doctor Duncan to reevaluate Soldevila and then filing a motion

for a continuance in order to have time to respond to any

findings doctor Duncan might make.

Following doctor Duncan's new and unexpected

conclusion that Soldevila was malingering, however, Soldevila was

entitled to an opportunity to prepare a response to that finding.

-18-
18

"[A]ppellant was entitled to call psychiatric witnesses of his

own choosing who, after examining appellant, could testify as to

his mental state." United States v. Flynt, 756 F.2d at 1359.

2. Utility of the Continuance

Where a continuance is sought in order to provide time

for a psychiatric evaluation, a defendant cannot be expected to

present to the court, in advance, the substance of the witness's

testimony in order to establish its utility. Pope, 841 F.2d at

954. The relevance of additional expert testimony, however,

should have been apparent from Soldevila's behavior and Attorney

Nogueras' comments at both the competency hearing and final

sentencing on May 24 and May 25. See id.

At the May 24 hearing, Attorney Nogueras informed the

court that on May 23, he and Attorney Furst went to see Soldevila

at the MDC and that during this visit, Attorney Nogueras was

unable "to get through to [Soldevila] at all," Attorney Nogueras

found himself completely incapacitated to convey to Soldevila the

meaning of the upcoming competency hearing, and Soldevila did not

recognize Attorney Furst, who had been his attorney for a long

time.

On May 25, before the district court judge imposed the

final sentence, Attorney Nogueras informed the court that he had

just asked Soldevila if he knew what was going on and Soldevila

said no. At sentencing the following exchange took place:

THE COURT: . . . If he admits guilt today,
he says I am sorry, Judge, for what I did. I
bought those 25 kilos of cocaine. He says
that, I will give him the two points. If he

-19-
19

doesn't say that, I won't . . . .

MR. NOGUERAS: I will ask my client that
right now.

THE COURT: He will have to explain to me why
he is sorry.

MR. NOGUERAS: To be on the record I want, I
don't even know if he understands.

MR. NOGUERAS: Well, let the record show,
your Honor, that I made four different
questions to defendant. One, what was going
on; number two, did he buy cocaine; number
three, does he know that he might get two
points reduced in his sentencing. He says,
no, I don't remember what [sic].

THE COURT: Okay. So, he has no two points
. . . .

(A. 232).

The continuance would have clearly been useful to

enable Soldevila to present expert testimony that might respond

to doctor Duncan's new allegations of malingering. See United

States v. Barrett, 703 F.2d 1076, 1081 (9th Cir. 1983)

("defendant 'probably could have obtained an expert to assist him

[if he had] been given more time. . . . In failing to grant the

requested continuance . . . the trial court clearly abused its

discretion.' (citation omitted)") (quoted in Flynt, 756 F.2d at

1360). The continuance would also have helped counsel prepare an

explanation for Soldevila's responses at sentencing.

3. Inconvenience

Undeniably, the prospect of a continuance implied some

inconvenience to the district court and to doctor Duncan. Doctor

Duncan was not a local witness. The postponement of the

-20-
20

competency hearing from May 24 to May 25 had already required

doctor Duncan to remain in Puerto Rico an additional day.

"Nonetheless, the district court could have held the continuance

[Soldevila] sought to one or two days. Indeed, the district

court could have taken an active role in making sure the

evaluation took place and quickly. Balanced against . . .

[Soldevila's need for] a psychiatric evaluation, the

inconvenience did not justify the denial." Pope, 841 F.2d at

957.

4. Prejudice

In the present case, Soldevila was unable, without the

continuance, to present witnesses of his own choosing that might

have responded to doctor Duncan's new and serious charge that he

was malingering. A defendant's due process right to a fair trial

includes the right not to be tried, convicted or sentenced while

incompetent. Drope v. Missouri, 420 U.S. 162, 172-73 (1975).

Congress recognized and codified the right to a determination of

mental competency to stand trial in the Comprehensive Crime

Control Act of 1984, 18 U.S.C. 4241. This statute "permits

motions to determine [the] competency [of a defendant] 'at any

time after the commencement of prosecution for an offense and

prior to the sentencing of the defendant . . . .'" United States

v. Renfroe, 825 F.2d 763, 766 (3d Cir. 1987) (quoting 18 U.S.C.

4241(a)) (emphasis added).

Under 18 U.S.C. 4241(a), a court is required to hold

a competency hearing:

-21-
21

if there is reasonable cause to believe
that the defendant may presently be
suffering from a mental disease or defect
rendering him mentally incompetent to the
extent that he is unable to understand
the nature and consequences of the
proceedings against him or to assist
properly in his defense.

United States v. Pryor, 960 F.2d 1, 2 (1st Cir. 1992).

In order to find a defendant competent to stand trial

"it is not enough for the district court judge to find that the

defendant is oriented to time and place and has some recollection

of events." Dusky v. United States, 362 U.S. 402 (1960)

(internal quotations omitted). Instead, the "test must be

whether he has sufficient present ability to consult with his

lawyer with a reasonable degree of rational understanding -- and

whether he has a rational as well as factual understanding of the

proceedings against him." Id. (internal quotations omitted).

Soldevila's responses to Attorney Nogueras' questions

and Soldevila's failure to make an allocution at sentencing

suggested that Soldevila may not have had the constitutionally

required "rational as well as factual understanding of the

proceedings." Although doctor Duncan's report suggested that

Soldevila was merely malingering, Soldevila was clearly

prejudiced by his inability to present witnesses that could

respond to doctor Duncan's report.

5. Conclusion

"We recognize that [Soldevila] might have exercised

greater diligence than he did [and] [w]e do not intend to suggest

that the degree of diligence demonstrated by [Soldevila] would

-22-
22

necessarily be adequate under other circumstances." Flynt, 756

F.2d at 1360. However, because Soldevila has a constitutional

right not to be sentenced while incompetent and suffered

prejudice as a result of the denial of his motion for a

continuance and because a "continuance could have been brief

enough to cause only minimal inconvenience, and would have been

useful," we conclude that the court's denial of Soldevila's

motion for a continuance was arbitrary and unreasonable. See

Pope, 841 F.2d at 958. We therefore find that the district court

abused its discretion in denying Soldevila's motion and finding

Soldevila competent to be sentenced.

We vacate Soldevila's sentence and remand this case

for a full competency hearing and resentencing, if Soldevila is

found competent to be sentenced.

Vacated and remanded.

-23-
23